## J. K. LITTLE v. THE STATE OF TEXAS EX REL. A. A. PARSELL.

### No. 2920.

1. **Information—Quo Warranto—Amendment.**—If an information in nature of quo warranto presented by the Attorney-General is not sufficiently supported by his official oath to authorize the district judge to direct it to be filed, it seems competent for the court to permit the defect to be cured by an amendment duly verified, or by a separate affidavit to the truth of the matters alleged in the original information.

2. **Allegation of Value to Give Jurisdiction.**—The value of an office on inquiry into the holder's right thereto may be alleged as is the value of any tangible thing, without giving details making up the aggregate.

3. **Relator Need Not Show an Offer to Qualify.**—Contesting the occupant's right to an office, the contestant, in his affidavit to support the information, need not show an offer on his part to qualify and enter upon the discharge of the office.

4. **Application for Second Continuance—Diligence.**—An affidavit for second continuance not showing that funds were sent or provided to defray the expense of taking the depositions of nonresident witnesses by commission, does not show due diligence to obtain the testimony of the witnesses sought to be examined by commission.

5. **Same.**—An affidavit for second continuance for want of depositions of witnesses

living in an adjoining county held not to show diligence when it showed a commission had issued less than a month before the trial, and no showing made why the depositions were not taken, or excusing the delay in procuring the commission.

6.  **Legal Qualifications of County Judge.**—Section 15, article 5, of the Constitution, provides "that there shall be established in each county in this State a County Court, which shall be a court of record, and there shall be elected for each county, by the qualified voters, a county judge, *who shall be well informed in the law,*" etc.  This provision does not fix a disqualificatian, nor warrant in a contest for the office an inquiry before a jury trying the case of the legal knowledge of the relator.

7.  **Variance.**—The pleadings alleged that one S. Foster had voted when not a legal voter; the testimony was that one Squire Foster had voted illegally; *held,* no variance between the pleading and evidence as to name.

8.  **Value of an Office.**—The jurisdiction of the court is fixed by the amount in controversy in the petition.  In absence of a plea in abatement that the allegation was fraudulent, for purpose of obtaining jurisdiction, the value of the office in controversy is immaterial.

9.  **Res Gestæ.**—The declarations and conversations held by the presiding officer of an election with others when votes were challenged as illegal were competent as *res gestæ* of the election, the fairness of which was in issue.  See facts.

10.  **Assessment Rolls.**—The assessment rolls of a county are not evidence that parties upon the list charged with poll tax are in fact resident within the county.

11.  **Remarks by Trial Judge in Presence of Jury.**—In refusing to permit respondent to ask relator whether or not he was well informed in the laws of this State the judge remarked in presence of the jury:  "This question has never been passed upon by the higher courts, and this is as good a time as any for them to decide it."  *Held,* the remark was no ground for reversal; it did not of itself import for or against whom it was directed.

12.  **Residence in County Requisite to Voter for County Officers.**—In order to vote for county officers a voter must have resided twelve months in the State and six in the county, and must be a resident of the election precinct in which he votes.

13.  **Excluding Ballots from Count.** — See pleadings and facts where it was proper to refuse the charge:  "Before you can reject an illegal vote you must know for whom it was polled.  It can not be taken from the majority candidate unless proved to have been polled for him."

APPEAL from Lipscomb.  Tried below before Hon. Frank Willis.
The opinion states the case.

*W. H. Grigsby, Temple Houston,* and *W. H. Woodman,* for appellant.—1. The motion for leave to file an information in the nature of a quo warranto must be founded on affidavits stating all the grounds upon which the defendant's title is impeached, and the affidavit must state facts and not legal deductions, and that, too, with so much certainty and form that an indictment for perjury may be sustained.  Especially is this true when the information is brought for the twofold purpose of ousting the usurper from an office and determining the rights of another claimant thereto.  Ang. & Ames on Corp., 10 ed., sec. 748; High on Ex. Legal Rem., secs. 701, 730–34; 1 Bouv. Law Dic., 631; Commonwealth v. Jones, 12 Pa. St., 365; 5 Ohio, 249; United States v. Lockwood, 1 Pinn., 359; Kreitz v. Behrensmeyer, 17 N. E. Rep., 232.

2.  The first section of the act regulating proceedings in quo warranto

being a re-enactment of the English or 9th Anne statute, it must be considered as having been adopted with the construction given to that statute (State v. Smith, 55 Texas, 447; State v. De Gress, 53 Texas, 387), and the courts under that statute have universally held that informations in the nature of a quo warranto must be verified or based upon affidavit, both in England and in this country. Rex v. Sargent, 5 Term R., 469; Rex v. Scolden, 2 Barnard, 439; Rex v. Haywood, 2 East, 180; Rex v. Newling, 3 Term R., 310; Rex v. Lane, 5 B. & Ald., 480; Rex. v. Hatter, 3 Per. & D., 263; People v. Wait, 70 Ill., 25; Commonwealth v. Jones, 12 Pa. St., 365; Ang. & Ames on Corp., 748; Hunnicut v. The State, *supra,* 233; East Dallas v. The State, 73 Texas, 570; 1 Am. Dec., 50.

3. The information is criminal in form and must be sworn to. Rev. Stats., art. 431; 1 Bouv. Law Dic., 631; High on Ex. Legal Rem., sec. 710; Donnelly v. People, 11 Ill., 552; People v. Railway, 13 Ill., 66; Weight v. People, 15 Ill., 417; High on Ex. Legal Rem., 630, 710, 711; State v. Townsley, 56 Mo., 107; State v. Vail, 53 Mo., 97; State v. Kupferle, 44 Mo., 154.

*Browning & Madden* and *B. M. Baker,* for appellee.—There is no error in the action of the court in overruling appellant's motion to dismiss the suit because the original petition was not verified by affidavit. Acts 1879, chap. 48; Rev. Stats., arts. 1181, 1185, 1186; The State v. De Gress, 53 Texas, 397; Banton v. Wilson, 4 Texas, 406; Williamson v. Lane, 52 Texas, 335; McAllen v. Rhodes, 65 Texas, 348; People v. Clark, 4 Cow., 95; Hunnicut v. The State, *supra,* 233; East Dallas v. The State, 73 Texas, 370.

GAINES, ASSOCIATE JUSTICE.—This is a proceeding in the nature of a quo warranto instituted by the Attorney-General and the district attorney of the Thirty-first Judicial District of the State, at the instance of A. A. Parsell, against appellant, to try the title to the office of county judge of Roberts County. The case was brought in the District Court of that county, but was subsequently transferred to Lipscomb.

The original information was not supported by a sworn relation, nor were its allegations directly sworn to. It was, however, filed by order of the district judge. Before the trial a motion was made by the respondent to dismiss the information because it was not verified by affidavit. The court overruled the motion, and permitted the relator to file an amended information, accompanied with an affidavit that the facts therein alleged were true.

The court did not err in its ruling. If it should be held that an information presented by the Attorney-General is not sufficiently supported by his official oath to authorize the judge to direct it to be filed, we think it was competent for the court to permit the defect to be cured by an

amendment duly verified, or by a separate affidavit of the truth of the matters alleged in the original information.   See The State v. Wren, *supra*, 420; Hunnicut v. The State, *supra*, 233; East Dallas v. The State, 73 Texas, 370.

The appellant's second assignment of error is as follows:

"The court erred in overruling respondent's exceptions to plaintiff's second amended original petition, filed September 9, 1889, which exceptions were filed on September 9, 1889, for the reasons that said amended petition failed to show when the office was worth $2000; when the term would begin and when it would end; how long it would continue in order to render it worth $2000.

"And the relator, A. A. Parsell, fails to show that he offered to qualify as county judge of Roberts County, Texas, or that he took any steps or performed any act showing a desire to be installed in said office.

"And because the original petition of plaintiff was not verified by relator nor by anyone else, and could have no legal standing in court, and such omission was of such a nature as could not relate back and cure the defects in the original petition so as to give the District Court of Lipscomb County jurisdiction by the amendment.

"And further, the court erred in refusing to sustain the exception of defendant to that part of plaintiff's second amended original petition wherein they charge fraud and conspiracy between the defendant and the officers of the election held in Roberts County on January 10, 1889, because said amended petition fails to set out the facts constituting said fraud, or state upon what the fraud is based, so as to apprise the defendant of the nature of the fraud charged against him, and enable him to defend against the same, as shown by defendant's bill of exception No. 2."

In regard to the first ground of exception, it is to be said that the only purpose of an allegation of the value of the office is to show that the District Court has jurisdiction of the suit under the Constitution by reason of the amount in controversy (The State v. De Gress, 72 Texas, 242), and its value may be alleged in the same manner as the value of any tangible thing.   The allegation is "that said office of county judge of said county is reasonably worth the sum of $2000."   This is a specific allegation and is sufficient even upon special exception.

As to the second ground, we do not see that the relator's failure to show that he offered to qualify could affect the question of his right to the office.   The respondent had been declared elected, had qualified, and had entered upon the duties of the place.   Relator's offer to qualify under these circumstances would have been a very useless ceremony.   As to his desire to be installed into office, he has pursued the proper manner to evince that desire by causing this suit to be brought.

The question of the failure to verify the information by affidavit has been already passed upon.

In regard to the fourth ground of special exception, it is sufficient to say that the fraud in the election at the two voting places in the county at which respondent received a majority of the votes is specifically alleged. This will distinctly appear in another part of this opinion.

It is complained that the court erred in overruling respondent's application for a continuance. It was a second application, and was for the want of the testimony of sundry witnesses. None of the witnesses resided in the county in which the suit was pending. Some resided, as the application shows, in another county in this State, and some in Kansas and New Mexico. It was shown that commissions had been issued and mailed to the county clerks of certain counties in New Mexico and Kansas, to take the depositions of the witnesses residing there, some six weeks before the trial. No money was sent or arrangements made with the officers for the payment of their fees for taking the depositions. This was not diligence. The respondent also alleged that he placed a commission in the hands of a notary of Roberts County on the 20th of August, 1889 (less than a month before the trial), to take the depositions of certain witnesses residing in that county. Why the interrogatories were not filed and a commission issued to take their testimony at an earlier day, does not appear. The necessity of taking the depositions of the witnesses residing in Roberts County must have been known to respondent as soon as the case was transferred to Lipscomb County. He could have proceeded as soon as the papers were received by the clerk, which seems to have been on the 25th of May, 1889. The delay is not explained by the application for continuance, nor is it shown that the depositions could not have been taken and returned into court after the officer received the commission and before the case was called for trial. The application failed to show diligence, and was therefore insufficient. The continuance was properly refused. Railway v. Hardin, 62 Texas, 367.

During the progress of the trial, while the relator was being examined as a witness, counsel for respondent asked him certain questions with a view to determine whether or not he was well informed in the laws of the State. They were such as would have been proper to ask an applicant for license to practice law. Upon objections being made, the court refused to require the questions to be answered. Section 15, article 5, of the Constitution provides that "there shall be established in each county in this State a County Court, which shall be a court of record, and there shall be elected in each county by the qualified voters a county judge, who shall be well informed in the law of the State," etc. It may be, too, that if relator at the time of the election was disqualified to hold the office respondent was elected, although the former received a majority of the votes. Nevertheless, we are of opinion that it was never intended to fix a ground of disqualification to hold office by terms so indefinite as the phrase "well informed in the law." It is apparent that county judges

were not required to be lawyers, because that qualification is expressly provided by the Constitution for judges of the higher courts. In this State more than half the county judges who have been elected since the Constitution was adopted have been persons who have never devoted a day to the study of the law, and probably there have been more lawyers elected to the position than was expected when the Constitution was framed. Was it contemplated that these lay judges should be held disqualified because they could not swear that they were well informed in the law, or could not define a mandamus or an injunction? These were the questions asked of relator, and it was not error to refuse to allow them to be answered. If it had been intended to inquire into the extent of the legal learning of a county judge in order to determine his qualifications to hold the office, it would seem some examining board or committee would have been provided for to decide the question. It was certainly never contemplated that a jury should determine an aspirant's qualifications upon listening to his examination upon questions of law. We think the requirement that the county judge should be well informed in the law was intended as a direction to the voters, and that a majority of the ballots settles the question.

It was alleged in the information, in effect, that at the election S. Foster voted for respondent and that he was not a qualified voter. A witness for relator was permitted to testify, over objection by respondent, that he knew S. Foster, and that he was the same person known as Squire Foster, and that at the time of the election he resided in Hemphill County. The objection was that there was a variance between the pleading and evidence. There was no variance and the evidence was properly admitted. It did not appear that there was any other person in either Hemphill or Roberts County known as either S. Foster or Squire Foster.

The relator was permitted on the trial to testify that the office of county judge of Roberts County was worth $1200, and that respondent had told him that the Commissioners Court had allowed a salary of that amount, etc. It is urged that this was error; but if error, it was wholly immaterial. The relator alleged the value of the office to be $2000. The jurisdiction of the court is fixed by the amount in controversy, as shown by the petition, unless there be a plea in abatement averring that the allegation as to value or amount is not true in fact, and had been made with the fraudulent purpose of giving jurisdiction to the court in which the suit is brought. There was no such plea in this case, and hence it was unnecessary for relator to prove the value of the office. If it had been necessary we think the testimony admissible.

Appellant's sixth assignment is, in substance, that the court erred in permitting D. M. Hargrave, A. A. Parsell, and John Lard, witnesses for relator, over objection of defendant, to testify as to conversations which took place between said witnesses and D. E. Burns, the presiding officer

of the election at Miami, Precinct No. 1, and also as to conversations between said D. E. Burns and one W. A. Newman at said polls on said day.

It was charged in the information that the poll lists and tally sheets showed that 62 votes were cast at Miami, but that there were the names of 14 persons upon the list who in fact did not vote at the election, and that all the votes at that box but one were counted for respondent. It was also charged that of those who did actually vote there were 24 who were not qualified voters. There was direct evidence to support these averments. On the other hand, Burns, for respondent, testified that he was presiding officer at the election; that the votes were legal, so far as he knew; and that all the voters whose names appeared upon the poll lists actually voted in the order in which their names appeared. The testimony objected to as set out in the bill of exceptions is as follows: That the witnesses (Hargrave, Parsell, and Lard) "were at the election polls at Miami on January 10, 1889, for the purpose of challenging illegal votes; that they challenged numerous voters, and that D. E. Burns, as presiding officer of said election, swore the several voters challenged; that Burns questioned the several proposed voters, in substance, as follows: Have you resided in the State of Texas one year, and have you resided in the district or county in which you offer to vote six months? That said Burns asked no questions as to whether voters resided in the precinct; that said witnesses desired and requested the said Burns to ask the proposed voter if he had resided six months in Roberts County next before the election; that said Burns replied that he would ask such questions as he saw proper; that he stated to witness Hargrave at the time he challenged the vote of W. A. Newman, and after Newman had stated that he lived in Gray County, and only came to Roberts County the night before, that he, Hargrave, had no more right to ask the proposed voter a question than a yellow dog in the street; that Burns directed the said voter Newman to hold on, and not to answer any questions except what he, Burns, asked; that said Burns interrogated the other voters whose votes were challenged by witness substantially the same way, and always re·ceived the vote, and that none of the other managers of the election said anything, and that no vote was put after the voter was challenged." The conversations were a part of the *res gestæ* of the election, the fairness of which was in issue. The testimony conduced to. show the animus of the presiding officer, and that his purpose was not to conduct the election fairly. The circumstances testified to tended to throw light upon a matter about which the direct evidence was conflicting, and was therefore admissible.

The respondent offered the assessment rolls of Roberts County for the year 1889 for the purpose of showing that certain persons who were challenged as illegal voters had been assessed for poll tax as residents of the

county for the year 1889.   The assessment rolls were the compilation of the assessor, made up from lists rendered by the tax payers, or of lists made out by himself from his own knowledge, and as to this controversy were in the nature of hearsay evidence, and therefore inadmissible.   It was held by this court in Davis v. The State, *supra,* that the declarations of a person who has voted at an election concerning his qualifications to vote, made after the election, are not admissible in evidence.   There was no assessor in Roberts County until after the election, and therefore the original lists rendered by the tax payers themselves, if offered, would have come under the rule in the case last cited and would not have been competent evidence.   They could only have been made after the election.

The eighth assignment is that "the court erred in making use of the following language in the presence and hearing of the jury, in refusing to permit respondent to ask relator A. A. Parsell whether or not he was well informed in the laws of this State, to-wit:  ' This question has never been passed upon by the higher courts, and this is as good a time as any for them to decide it;' because the same clearly intimated to the jury that the court was of opinion that defendant would be cast in the suit, and was calculated to convey to the minds of the jury impressions unfavorable to the merits of the defendant's cause."

We fail to see that the language complained of conveyed any intimation to the jury prejudicial to appellant.   It does not even remotely imply that the court was of opinion that the respondent would be cast in the suit.   If the judgment had been in favor of respondent and relator had appealed, the question could have been brought before this court by a cross-assignment of error.

It is complained that the court erred in the following instruction to the jury, contained in the general charge:

" By the language ' who shall have resided in the State one year next preceding an election, and the last six months in the district or county in which he offers to vote,' is meant at any State or district election a person would be qualified to vote for State or district officers if he possessed none of the disqualifications mentioned in paragraph 2 of this charge, and had lived one year in the State next preceding such election, and the last six months in the district in which he offered to vote; but at an election held for the purpose of locating a county seat, and to elect county officers only, the test as to residence in order to be a qualified elector would be one year in the State next preceding such election, and the last six months in the county in which he offered to vote."

We think the court correctly interpreted the language quoted in the charge.   It is found in section 2 of article 6 of the Constitution.   In our opinion it admits of no other reasonable construction.   When construed as meaning that a residence for six months in the district should qualify an elector to vote for district officers, we have no difficulty in determin-

ing what district is meant; but if we should say that such residence gives a right to vote for county officers, we should be at a loss to know whether it is the congressional, judicial, senatorial, or legislative district in which the voter was to reside in order to acquire the qualification. If such had been the intention, the kind of district would have been named, or there would have been some language in the provision indicating some rule by which the question could be determined. Besides, the construction claimed by appellant would have rendered the words "or county" superfluous, because every county in the State is, and will in all probability continue to be, a part of some district. Since the district includes the county, it was unnecessary to have used the word county if it had been intended that a residence in the district should give the qualification to vote for county officers.

It is also assigned that the court erred in refusing to give the following instruction:

"An election precinct is any part of a county fixed by law within which the citizens residing therein must vote, and to constitute a change of residence from one precinct to another there must be an actual removal."

We have found nothing in the testimony that made such an instruction necessary. The court in its general charge instructed the jury that each elector must have voted in the precinct of his residence, and gave them the statutory requirements of residence. There was some evidence tending to show that some three or four persons who resided in one precinct went to another and there voted. If the jury believed this, under the charge given they must have disregarded their votes in determining their verdict.

The appellant asked the court to charge the jury as follows: "Before you can reject an illegal vote you must know for whom it was polled. It can not be taken from the majority candidate unless proved to have been polled for him." The request was refused and the refusal is assigned as error. The relator had offered the original ballots in evidence, and respondent having objected, they had been withdrawn. There was no direct evidence in the case showing for which of the candidates many of the voters had cast their ballots. The information charged that of the votes cast at Box 1 but one was counted for relator, and that 61 were counted for respondent, of which 14 were never cast at all and 24 were fictitious; and that at Box 2, 48 votes were counted for respondent and none for relator, of which 45 were fictitious or fraudulent. There was strong testimony introduced to support these allegations. There was testimony upon the other side in direct conflict with this. But the jury, without knowing for whom any particular vote was cast, had evidence before them sufficient to have authorized them to find a verdict for either party. In such a case the charge requested would have been erroneous.

There are other assignments that are unaccompanied by either propositions or statements, and they will not be considered. Gallagher v. Goldfrank, Frank & Co., *supra,* 562.

The twenty-first assignment is too general. But we think we have passed upon every question in the case worthy of consideration. We find no error in the admission of evidence or in the giving or refusing of instructions. The testimony was conflicting upon the main issues, and the verdict of the jury can not be disturbed.

The judgment is therefore affirmed.

*Affirmed.*

Delivered January 21, 1890.