### CONSOLIDATED COMMON SCHOOL DIST. NO. 5 v. WOOD et al.

### No. 1824.

Court of Civil Appeals of Texas. Eastland.

Nov. 24, 1937.

Rehearing Denied Jan. 7, 1938.

232

Frank Sparks, of Eastland, for plaintiff in error.

Russell & Russell and F. E. Mitchell, all of Baird, for defendants in error.

FUNDERBURK, Justice.

As the result of an election in each of Common School Districts Nos. 14 (Erath Common School District), 15 (Hart Common School District), and 16 (Colony Common School District), of Callahan County, held on April 14, 1928, Consolidated Common School District No. 5 was created, under authority of R.S.1925, art. 2806. Thereafter a school building was erected within the former territory of Common School District No. 16 (Colony Common School District), which was destroyed by fire on July 31, 1936. Said consolidated district, through its board of trustees, soon after the fire advertised for bids for the erection of a new building on or near the site of the former building, and gave notice of the purpose to let a contract on the 15th day of September, 1936, for the construction of such building. On September 9, 1936, the county judge of Callahan

county, in response to a petition therefor, ordered an election to be held in said Consolidated Common School District No. 5 on September 30, 1936, to determine whether such district should be dissolved, and the three said original districts restored to their former status. The action was referable, no doubt, to the authority granted in R.S.1925, art. 2815.

This suit was filed on September 11, 1936, by J. E. Wood, J. O. Taylor, and Olin Elliott, against said Consolidated Common School District No. 5, and its board of trustees. Plaintiffs' original petition was on March 26, 1937, superseded by their first amended original petition, in which latter, among other things, was alleged the filing of this suit, on the 11th day of September, 1936, "and at the time of the filing thereof and at the present time plaintiffs were and are not residents of said original Colony Common School District No. 16, but were at the institution of this suit and are now residents and taxpayers in the original common school districts of Hart No. 15 and Erath No. 14." The election to dissolve and which was ordered to be held on September 30, 1936, as aforesaid, was alleged to have resulted in favor of dissolution; that same had not been contested and the time to contest same had passed; that said consolidated district "no longer has a corporate existence except for the purpose of winding up its affairs, paying its debts and making proper distribution of its assets to its successors. * * * And that the board of trustees of said consolidated common school district No. 5 have no other or further power or authority than to wind up the affairs of said defendant district, pay its debts and make proper distribution of its assets."

"Disregarding these facts," the pleading goes on to aver, "the board of trustees of said defendant district are still claiming authority to act as a board with full powers, and are threatening to rebuild said school building out of the common funds of the three common school districts of Colony No. 16, Hart No. 15 and Erath Common School District No. 14, which have been restored as common school districts of Callahan County, Texas, as the result of said election, and that said defendant school board proposes to build said school building in the restored Colony District No. 16 and will do so unless restrained by this court; and unless said board of trustees are so restrained, these defendants [plain-tiffs] together [with] all other residents, taxpayers and patrons of said Hart Common School District No. 15 and Erath Common School District No. 14, will be deprived of their rights as such residents, taxpayers and patrons of said restored common school districts."

It was also alleged that upon the institution of the suit the court had granted a temporary injunction "commanding the defendant school district, and its board of trustees, to desist and refrain from letting any contract for the erection of a school building, or otherwise creating any indebtedness against said district pending the results of said election and until the further order of this court, which temporary injunction is now in full force and effect." Said amended pleading closed with a prayer "that the temporary injunction * * * be made permanent. * * *"

The defendants, among other things, affirmatively challenged the validity of the election held on September 30, 1936, to determine whether the consolidated districts should be dissolved, on the ground that said election was petitioned for, ordered, held, and the result declared contrary to the provisions of said R.S.1925, art. 2815.

In a nonjury trial judgment was rendered for plaintiffs providing that the temporary injunction should "be perpetuated and made permanent," thus permanently restraining said Consolidated School District No. 5 and its board of trustees from erecting any school building, or letting any contract for such erection, or from in any manner creating any indebtedness against the district, etc.

Conclusions of fact and of law were filed. Among the facts found were that, as to the order for the dissolution election, the petition, the order of the county judge, and the election itself took no account of the original common school districts of which said consolidated district was composed, but that such petition, order, and election treated said Consolidated Common School District No. 5 as a single political unit for the purpose of said election.

The conclusions of law were as follows: "I conclude, as a matter of law, that it was not necessary under the law that there be a separate petition signed by twenty or a majority of the voters from each of the original districts of which said Consolidated Common School District was composed, but that one petition, signed by twenty, or a majority of the voters of said Consolidated

District, as a whole, was sufficient to authorize the county judge to call said election. That only one election in the said Consolidated district as a whole was necessary under the law, and that such an election was held and the same was legal. That as a result of said election the said Consolidated Common School District No. 5 was dissolved, and that the original districts of which same was composed are now restored to their status as common school districts."

The defendants have appealed, and the parties will be referred to as they were in the court below.

■ The subject matter of this suit is such as is usually and appropriately presented by an action in the nature of quo warranto. The trustees of Consolidated Common School District No. 5, when halted by the temporary injunction, issued upon the filing of this suit, were proceeding in the exercise of powers undoubtedly then possessed by them. The purpose of the temporary injunction was to delay the exercise of such powers until an election, then ordered, could be subsequently held to determine whether or not the consolidated districts should be dissolved. There was, apparently, no appeal from such action, and the matter is mentioned in this connection only because the nature and purpose of the temporary injunction as shown by the allegations of plaintiffs' trial pleading tend to show the true nature of this suit as it finally developed after the election, and upon the filing of plaintiffs' first amended original petition. The relief finally sought was to have the temporary injunction made perpetual. It is doubtful, we think, if the averments of plaintiffs' petition showed the violation of any of their rights, unless perhaps political rights. The action not being one in the nature of quo warranto, nor a statutory election contest, it is very questionable, we think, whether the suit has any other purpose than to establish a political status, as to which plaintiffs have no special or pecuniary interest entitling them as individuals to maintain it. Mickle v. Garrett, Tex. Civ.App., 110 S.W.2d 1235, and authorities there cited. The question thus suggested by the record is not presented by any assignment of error, and the judgment recites that the parties waived certain points in order to get a clear-cut decision construing the statutes governing the elec-

tion to dissolve the consolidated district. Under these circumstances, we have not looked carefully into the question of the right of the plaintiffs to maintain the action and have determined to assume, without deciding, their right to do so, the contrary not so clearly and certainly appearing as to impress us that it is our duty, under the circumstances, to dispose of the case upon that ground.

If said election of September 30, 1936, was void, then no act with which the defendants were charged should have been enjoined. The applicable statutory provisions are R.S.1925, art. 2806, as amended by Acts 1931, c. 106, § 1, and article 2815, Vernon's Ann.Civ.St. arts. 2806, 2815. Article 2806, in part, provides that: "On the petition of twenty (20) or a majority of the legally qualified voters of each of several contiguous common school districts, * * * praying for the consolidation of such districts for school purposes, the County Judge shall issue an order for an election to be held on the same day in each such district. The County Judge shall give notice of the date of such elections by publication of the order in some newspaper published in the county for twenty (20) days prior to the date on which such elections are ordered, or by posting a notice of such elections in each of the districts, or by both such publication and posted notice. The Commissioners' Court shall at its next meeting canvass, the returns of such elections, and if the votes cast in each and all districts show a majority in each district voting separately in favor of such consolidation, the Court shall declare the school districts consolidated."

Article 2815, so far as applicable, provides: "Such consolidated districts may in the same manner provided for their consolidation, be dissolved and the districts included therein restored to their original status, except that it shall not be necessary to provide polling places in each district. Each such district when so restored shall assume and be liable for its pro rata part of the outstanding financial obligations of the consolidated district, such pro rata part to be based on the relation the total assessed valuation of all property in the district bears to the total assessed valuation of property in the consolidated district, as shown by the assessment rolls of the district for the current year. No election for the dissolution of said consolidated districts

shall be held until three years have elapsed after the date of the election at which such districts were consolidated."

As having some bearing upon' the interpretation of said statutes it may be observed that article 2807 makes provision to the effect that, when upon such proposed consolidation any of the districts has outstanding bonds an election in the consolidated districts, after consolidation, may be held to determine whether such bonds shall be assumed by the consolidated district, or that such question may be voted upon on the same day of the election for consolidation, but with the provision that, "If said election on the question of assuming said outstanding bonds is held on the day upon which the election on the question of consolidation is held, there shall be separate notices, ballots, and ballot boxes and tally sheets for the two separate elections."

A clause of article 2806, coming after the portion above quoted, is: "provided further, that when it is proposed to consolidate contiguous county, line districts, the petition and election orders prescribed in this Act shall be addressed to and issued by the County Judge of the County having jurisdiction over the principal school of *each* district and the results of the election shall be canvassed by the Commissioners' Court·of the *said county.*" (Italics ours.)

 In the distribution of the powers of government into three distinct departments, as made by the Constitution, the formation and dissolution of school districts pertain to the legislative department. Ordinarily the exercise of legislative or political powers and the redress of political wrongs are not subjects of judicial cognizance. It cannot be questioned that the Legislature could by general law have provided, in effect, for the consolidation of the three districts here involved or could have established three districts out of the territory of the consolidated district without the existence or powers of such districts being in any manner dependent upon the result of any election. The Legislature in providing for the elections for consolidation and dissolution thereby delegated a part of the legislative power to the qualified voters of the districts. When legislative power is so delegated, it often becomes necessary to inquire if the delegation be absolute and unconditional, or qualified and conditional. If the delegation of political power is made in such terms as to show that it is to be exercised in a prescribed manner, the manner is from the very nature of the case a qualification or limitation upon the effective exercise of the delegated powers. When the Legislature, instead of directly creating school districts, and investing them with' such powers and subject to such limitations as it sees fit, enacts that such districts may be created and possess certain powers dependent upon the result of elections to be petitioned for, ordered and held and results declared, in prescribed ways, each step prescribed constitutes a condition upon which the delegation of its power is made effective. Coffee, County Atty., v. Lieb, Tex. Civ.App., 107 S.W.2d 406.

 Article 2806 seems sufficiently definite not only as to the powers granted, but the several steps in the nature of conditions precedent upon which the qualified voters of contiguous school districts may, in effect, legislate into existence a consolidated school district. It was not necessary for the Legislature to make any provision investing the qualified voters of such a district with the political power or right to dissolve it and thereby in effect recreate three districts out of one. Such power is given, however, by article 2815. The procedure, by which such power becomes exerciseable, is prescribed only by reference and in such a general way as to give rise to the question presented in this case, the answer to which calls for the application of rules of construction. The provision is that such consolidated districts may *"in the same manner provided for their consolidation,* be dissolved," etc. ·(Italics ours.) All else in the article, except the provision that no such election "shall be held until three years have elapsed after the date of the election in which such districts were consolidated," are but statutory declarations of the result of the dissolution. But such results of dissolution are none the less the results of the exercise of political powers delegated to the voters upon the prescribed conditions. The power to dissolve the consolidated district and thereby re-establish the formerly existing component districts is thus delegated upon the condition that it be done in the *same manner* provided for their consolidation. In other words, the Legislature in prescribing the several essential steps by which such delegated power should fully vest did so by reference to the procedure by which the consolidation was effected. It is not permissible, we think, to substitute any other, unless some other is expressly authorized, or excepted

from the requirement that it be in the *same manner* as provided for consolidation. One such exception is made, which is that "it shall not be necessary to provide polling places in each district." That was a wholly unnecessary exception, unless it was deemed by the lawmakers that by proceeding to a dissolution "in the same manner" would require as many different polling places as was required in the elections for consolidation. Therefore, if there was any doubt or uncertainty as to what was meant by the "same manner provided for their consolidation," the exception would seem to remove such doubt and make clear the meaning. It seems to us the general provision read in connection with the single exception compels the conclusion that the "same manner" would require one or more petitions, signed by twenty or a majority of the legally qualified voters of each of the formerly existing districts; that the election be held at the several polling places in each of said districts or (under authority of the express exception) at one polling place, but just as was provided in article 2807, with reference to the two kinds of elections held at the same place, that separate ballot boxes and tally sheets, etc., be provided and that the result or results of the several elections be separately ascertained and declared. The last-named provision shows that the Legislature did not regard election and polling places as synonymous.

There is another consideration which seems to us to favor such interpretation of the phrase "in the same manner provided for their consolidation." The steps prescribed for consolidation quite clearly manifest the policy that no such consolidation shall be effected contrary to the will (expressed in the elections) of any one of the districts. Of any number of districts involved in a proposed consolidation the unanimous will of all, ascertained by elections separately held, is required. But, if the construction of these statutes contended for by the plaintiffs be correct, then a contrary policy is manifest in the provisions for the dissolution of consolidated districts. Under that construction it would be possible to dissolve a consolidated district by the will of the voters in the territory of a single district which went into the consolidation, although contrary to the will, if separately expressed, of all the other districts involved in the consolidation. We can perceive no reason why one policy

should prevail in consolidations and a contrary policy in dissolutions.

Suppose one of three or more districts consolidating had a large bonded debt and all the others had none. As shown, optional provision is made for the assumption of such debt by the consolidated district. Upon a dissolution each of the re-established districts would by the plain provisions of said article 2815 be liable for its pro rata part of such assumed debt to be determined by the proportion its total assessed valuation of all property bears to the total assessed valuation of property in the consolidated district. Under the construction of the statute contended for by plaintiffs it would be possible for the district having the large debt, by the will of the voters in the area comprising such former district, to dissolve the consolidated district and thereby saddle a large part of its former indebtedness upon the other districts, contrary to the will of the majority of the voters in the territory of such other districts. Of two constructions, one of which would render such a thing possible, and the other not, we think the latter should be favored.

There is yet another consideration which seems to us to afford some reason for favoring the interpretation of the statute as stated. In construing a statute, it is always permissible to consider how, under given constructions, it would operate upon various circumstances different from those involved in a particular case. Consolidation of contiguous districts in different counties is authorized by the same statute. In such case petitions would necessarily have to be made to different county judges. Each county judge would be required to make separate orders of elections. The commissioners' court of each county would canvass the returns and declare the result of the elections held in such county. An essential factor in the qualifications of all voters would be a six months' residence in the county where the elections were held. R.S.1925, art. 2955; Little v. State, 75 Tex. 616, 12 S.W. 965. Such a consolidated district would, of course, have the same right to dissolve. How? The only way prescribed is that contained in the words by which the power is delegated, namely: "In the same manner provided for their consolidation." Is it reasonable to ascribe to the Legislature the intention by the use of said words to prescribe a different pro-

cedure from that just stated in case of a proposed dissolution of consolidated county line districts, particularly when it appears that, if so, it would involve a change in an essential qualification of the voters in one of the counties so as to substitute for the factor of six months' residence *in the county*, six months' residence *in the district?*

 It seems to us that unless by the language in question the legislative intent is shown to adopt all the steps pre-scribed for the formation of consolidated districts as the procedure for the dissolution of such districts, then the language in question is so uncertain and indefinite in meaning as to fail of its purpose to prescribe the necessary procedure by which the qualified voters may be authorized to exercise the powers attempted to be delegated.

It is argued with some degree of plausibility that, when districts consolidate, the formerly existing districts with their boundary lines wholly cease to exist. But, if that were absolutely true, and for all purposes, how upon a dissolution, even if that can be done by an election ignoring the former district lines, could said district lines be restored without some kind of a redefinition? Evidently for the purpose of dissolution; at least, the former districts do not wholly and absolutely cease to exist. This point lends some significance to the words "for school purposes" as employed in said article 2806, apparently as a limitation upon the effect of consolidation.

Further, suppose each of a number of districts entering into a consolidation have outstanding bonded indebtedness; and suppose at an election, held to determine whether such debts shall be assumed by the consolidated district, the proposition fails, would not each former district have a continued existence for the purpose of levying and assessing taxes and paying such debt? Certainly there can be no difference of opinion as to that. If the districts may have a continued existence after consolidation for any purposes, why not for the purpose of applying the only procedure prescribed for the dissolution of the consolidated district?

It is accordingly our opinion that the election was void and ineffective to change the status of the consolidated school districts; that, assuming the right of plaintiffs to maintain the action, this court has jurisdiction so to declare under the author-ity of Winder v. King, Tex.Com.App., 1 S. W.2d 587, from which it follows that the judgment of the court below should be reversed and judgment here rendered for the defendants to the effect that plaintiffs take nothing against them. It is accordingly so ordered.