

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
ATTORNEY GENERAL

October 27, 1960

*Superseded by Art VI, Sec. 2a, 2f. Const. and Arts. 5.05a – 5.05d 2f(a) Election Code.*

Honorable A. W. Walker
County Attorney
Dickens County
Spur, Texas

Opinion No. WW-952

Re: Voting rights of
persons who have
resided in the State
more than one year
but have changed
their residence from
one county to another
less than six months
before the election.

Dear Mr. Walker:

You have requested an opinion on the following question:

Is it legal for a person who has been a resident of the State of Texas for more than 12 months but who has resided in Dickens County for only one month to vote on State and National offices in the General Election in November in the election precinct of his residence in Dickens County, Texas?

In the brief accompanying your request you refer to Attorney General's Opinion No. 0-2666, dated August 31, 1940, and ask in effect whether that opinion is still a correct statement of the law. Citing Article VI, Section 2 of the Texas Constitution, Article 2967 of the Revised Civil Statutes, and the case of Little v. State ex rel. Parsell, 75 Tex. 616, 12 S.W. 965 (1890), Opinion No. 0-2666 held that a voter who moves from one county to another in the same district within less than six months of the election may vote in the election precinct of his new residence for all state offices and for all district offices whose districts include both counties. The reason for your questioning whether this holding is still correct is explained in the following quotation from your brief:

"My concern in this matter is based on the fact that Article 5.15 of the Election Code is worded differently from Article 2967 of the Revised Civil Statutes, which was in force in 1940. You will notice that Article 5.15 of the Code

> provides that the voter must make an oath that
> he has resided in the county where he offers
> to vote for six months, while Article 2967,
> which Article 5.15 replaced, provided that
> the voter must make an oath that he has re-
> sided in the district or county where he of-
> fers to vote for six months. In other words,
> the words 'district or' were left out of Ar-
> ticle 5.15. However, Article VI, Section 2
> of the Constitution still reads the same old
> way. Also, see 15-B Tex.Jur. 387-388, Sec.
> 31, footnote 20. In addition, see said 1940
> opinion and Attorney General's letter opinions,
> July 11, 1932 (Vol. 336, p. 518), July 1, 1936
> (Vol. 372, p. 500), and August 6, 1938 (Vol.
> 382, p. 617)."

At the outset it should be observed that the only place at which a person may vote is at the place of his resi- dence at the time of the election. (Throughout this opinion, residence means legal residence or domicile, as distinguished from actual place of abode while absent from one's domicile.) When a person changes his residence from one county to another, he immediately loses his right to vote in the county of his former residence, either by absentee ballot or by returning to the county to vote on election day, even though he may not be able to vote in the county of his new residence until he has fulfilled the requisite length of residence to permit him to vote there. Art. VI, Sec. 2, Tex. Const.; Arts. 2.06 and 5.05, Election Code; Sartwelle v. Dunn, 120 S.W.2d 130 (Tex.Civ.App. 1938).

The nature of the right of suffrage (frequently called a privilege rather than a right) is stated in the fol- lowing quotation from the opinion in Solon v. State, 54 Tex. Crim. 261, 114 S.W. 349, 352 (1908), which also cites numerous other supporting authorities:

> "The true rule is that the right to vote is
> not a necessary or fixed incident of citizenship,
> or inherent in each and every individual, but that
> voting is the exercise of political power, and no
> one is entitled to vote, unless the people in their
> sovereign capacity, have conferred on him the right
> to do so. It may be laid down as a general proposi-
> tion that the right of suffrage may be regulated and
> modified or withdrawn by the authority which con-
> ferred it. * * * In the case of State v. Dillon, 32
> Fla. 545, 14 So. 383, 22 L.R.A. 124, in treating
> this general subject, the court say: 'The right to

Honorable A. W. Walker, page 3 (WW-952)

vote is not an inherent or absolute right found
among those generally reserved in bills of rights,
but its possession is dependent upon constitutional
or statutory grant. Subject to the limitations con-
tained in the federal Constitution, the elective
franchise is under the control of the sovereign
power of the states, expressed in Constitutions or
statutes properly enacted. Where a Constitution has
conferred the right and prescribed the qualifications
of electors, it of course is paramount until amended,
and the Legislature cannot change or add to them in
any way; but, where the Constitution does not fix the
right of suffrage or prescribe the qualifications of
voters, it is competent for the Legislature, as the
representative of the lawmaking power of the state,
to do so. These principles are well recognized and
fully established by authority in this country.'"

The extent to which the Federal Constitution controls
the right of suffrage is summarized in the following quotation
from Voting and Election Laws, by Constance E. Smith (Oceana
Publications, Inc., 1960), p. 11 (see, also, 18 Am. Jur.,
Elections, §§ 46, 47; 29 C.J.S., Elections, §§ 5-8):

"* * * The Constitution grants to the state
legislatures the power to prescribe 'the times,
places and manner of holding elections for senators
and representatives,' and also the power to deter-
mine the manner of appointing presidential electors.
These two grants of power coupled with each state's
unquestioned authority to control all elections for
state offices endow the states with decisive control
over all elections; for, while it is true that the
Constitution reserves to Congress the right to make
or alter regulations for congressional or senatorial
elections, Congress has only rarely exercised this
power and then only in very limited ways. * * *

"One reads the Constitution in vain for a con-
crete definition of who shall have the right to vote;
there is only the declaration of the 15th and 19th
Amendments that a citizen may not be denied the right
to vote because of race, color, previous condition
of servitude, or sex. A section of the 14th Amend-
ment defining citizens as 'all persons born or nat-
uralized in the United States and subject to the
jurisdiction thereof' is relevant, since citizen-
ship is in all states a requisite for suffrage.
With the exception of these broad restrictions, full
responsibility for determining voter qualifications
comes within state jurisdiction;* * *."

Subject to the foregoing limitations, it is thus seen that in elections for federal offices as well as for state offices, the State may grant or withhold suffrage as it sees fit and may impose whatever voter qualifications it chooses.

Article VI, Section 2 of the Texas Constitution provides:

"Every person subject to none of the foregoing disqualifications /contained in Section 1 of Article VI/, who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this State one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified elector;* * *." (Emphasis supplied.)

Prior to 1951, Article 2955 of the Revised Civil Statutes, which is now Article 5.02 of the Election Code, contained this identical provision. Article 2967, R.C.S., which is now Article 5.15 of the Election Code, provided that a voter who moved to another county after receiving his poll tax receipt or exemption certificate could vote in the precinct of his new residence by making oath "that he then resides in the precinct where he offers to vote and has resided for the last six months in the district or county in which he offers to vote and twelve months in the State." When the Election Code was adopted in 1951, the words "district or" were dropped from Articles 5.02 and 5.15 of the Code. (In the historical comment under Article 5.02 of Vernon's Election Code, it is stated that the word "district" was omitted because the word district is too indefinite.)

The Constitution fixes the qualifications of an elector, and the Legislature is powerless to add to or take from these qualifications. Solon v. State, supra; Koy v. Schneider, 110 Tex. 369, 218 S.W. 479, 221 S.W. 880 (1920); Texas Power and Light Co. v. Brownwood Public Service Co., 111 S.W.2d 1225 (Tex.Civ.App. 1937, error ref.); King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408 (1956). Accordingly, the Constitution and not the statutes must be looked to in determining what residence requirements are imposed upon voters, and for this purpose the omission of the words "district or" from Articles 5.02 and 5.15 of the Election Code may be disregarded. Your question, therefore, is to be answered on the basis of the residence requirements set out in Article VI, Section 2 of the Constitution.

Voters who have moved from one county to another within less than six months preceding an election must be broken down into two categories: (1) those who have resided for six months within a district which includes the county of their former residence and the county of their new residence (under present governmental organization, the district may be either a congressional, senatorial, representative, judicial, supreme judicial, or State Board of Education district); and (2) those who do not have six months' residence in any one of these various types of districts. (Throughout this opinion it is assumed that the voter has resided in the State for one year and is otherwise qualified to vote.)

Little v. State ex rel. Parsell, 75 Tex. 616, 12 S.W. 965 (1890), defines the voting rights of persons in the first category. In that case, complaint had been made to the following jury instruction:

"By the language 'who shall have resided in the State one year next preceding an election, and the last six months in the district or county in which he offers to vote,' is meant at any State or district election a person would be qualified to vote for State or district officers if he possessed none of the disqualifications mentioned in paragraph 2 of this charge, and had lived one year in the State next preceding such election, and the last six months in the district in which he offered to vote; but at an election held for the purpose of locating a county seat, and to elect county officers only, the test as to residence in order to be a qualified elector would be one year in the State next preceding such election, and the last six months in the county in which he offered to vote."

The Supreme Court held that the instruction was not erroneous, saying:

"We think the court correctly interpreted the language quoted in the charge. It is found in section 2 of Article 6 of the Constitution. In our opinion it admits of no other reasonable construction. When construed as meaning that a residence for six months in the district should qualify an elector to vote for district officers, we have no difficulty in determining which district is meant; but if we should say that such residence gives a right to vote for county officers, we should be at a loss to know whether it is the congressional, judicial, senatorial, or legislative district in which the voter was to reside in order to acquire the

qualification. If such had been the intention, the kind of district would have been named, or there would have been some language in the provision indicating some rule by which the question could be determined. Besides, the construction claimed by appellant /that six months' residence in the district entitled the voter to vote for county offices also/ would have rendered the words 'or county' superfluous, because every county in the State is, and will in all probability continue to be, a part of some district. Since the district includes the county, it was unnecessary to have used the word county if it had been intended that a residence in the district should give the qualification to vote for county officers."

Article VI, Section 2 of the Constitution was also construed in United States v. Slater, 6 Fed. 824 (Cir. Ct., D. Tex. 1881), which held that a voter who had resided for six months in a congressional district but less than six months in the county could legally vote for congressman and for all state officers. The Court said:

"But if, being a citizen of the United States, a residence of one year in the state, and the last six months next before the election within the district, will give him a right to vote in the election precinct in which he resides, for what officers can he vote? Our present constitution provides, (article 6, § 3:) 'All qualified electors of the state, * * * who shall have resided for six months immediately preceding an election within the limits of any city or corporate town, shall have the right to vote for mayor and all other elective officers.' It is clear that a residence in the district for six months does not give the right to vote for city or town officers, unless the residence has been in said city or town; and, by parity of reasoning, such residence would not give the right to vote for county officers unless said six-months' residence had been within the county; and, by a like parity of reasoning, such residence would give the privilege of voting for district officers and for state officers, he having the other qualifications, and having resided the required six months in the district, and the required one year in the state, next before the election, and duly presenting himself in the election precinct in which he resides. And this rational conclusion is made irresistibly strong by the previous uniform practice of permitting qualified electors of the State to vote for state and district offices, where

4713

their residence was not such as to authorize
them to vote for county offices at the time and
place of their offering to vote."

Later decisions of our courts have established that
voters who have resided in the county for six months may vote
in elections of political subdivisions within the county
which are denominated as "districts" without having six
months' residence in the political subdivision. Warren v.
Robinson, 32 S.W.2d 871 (Tex.Civ.App. 1930); Shaw v. Taylor,
146 S.W.2d 452 (Tex.Civ.App. 1940); Cramer v. Graham, 264
S.W.2d 135 (Tex.Civ.App. 1954, error ref.); Duncan v. Willis,
157 Tex. 316, 302 S.W.2d 627 (1957). In the last-cited case,
which involved a school district election, the Supreme Court
clarified the meaning of "district" in Article VI, Section 2
of the Constitution, as follows:

"Petitioners' assignment again raised the
mooted construction of the word 'district' ap-
pearing in the constitutional section. In Little
v. State ex rel. Parsell, 75 Tex. 616, 12 S.W. 965,
this Court construed the term 'district' as meaning
a political subdivision embracing one or more counties
and not one referring to subdivisions of a county such
as the school district here involved. This construc-
tion was discussed in Cramer v. Graham, Tex.Civ.App.
264 S.W.2d 135, 136 wherein it was stated that 'whether
rightly or wrongly, it has been decided /by the Supreme
Court7 that the word "district" as used in the phrase,
disjunctively with the word "county" is meaningless,'
and that the authorities support the rule that 'an
elector must be a resident of the State for one year,
resident of the county for six months, and a resident
of the subdivision of the county /such as a school
district7 wherein he votes at the time he votes, but
not necessarily for six months.' Application for writ
of error was refused in the Graham case and we regard
the construction of the constitutional phrase as set-
tled. See Cramer v. Graham, supra, and authorities
cited therein. This construction undoubtedly ac-
counts for the deletion of the words 'district or'
from Article 5.02 of the Election Code. Under the
rule above set forth the courts below were correct
in holding that the five persons above mentioned were
entitled to vote at the election in question although
they may not have resided in the Glenwood School Dis-
trict for a period of six months prior to the date of
the election."

In Duncan v. Willis the Court took note of the deletion
of "district or" from Article 5.02 of the Election Code without
expressly passing on what effect it had on districts embracing

one or more counties. The Court's use of the expression "mooted construction" might suggest that it thought the construction of "district" had become moot by virtue of the deletion, but this evidently was not the intended meaning. By discussing the construction which should be placed on the constitutional provision, the Court recognized that the word "district" continues to have force despite its deletion from the statute.

It is our opinion that, under the foregoing decisions, a person who has resided for six months in a defined district of the State which includes more than one county, but has resided less than six months in the county of his residence at the time of the election, may vote for offices of the district and for all offices which are voted on throughout the State,[1] but he may not vote for offices of districts in which he does not have the six months' residence or for county and precinct offices.

The second category of voters--those who do not have six months' residence in a defined district--presents the question of whether by virtue of one year's residence in the State they are entitled to vote for statewide offices, although they may not vote for district, county or precinct offices. Several Attorney General's letter opinions between 1930 and 1940 held that they may vote for state offices, while others rendered during the same period held that they cannot vote for any office. The only authorities cited in support of the holding that they could vote for state offices were Little v. State and United States v. Slater. There is strong argument in favor of the view that this should be the rule, but we are faced with the fact that the Constitution states the residence qualifications conjunctively as one year's residence in the State and six months' residence in the district or county. To be a qualified elector for any office or for any election, a person must fulfill both conditions of residence. Neither the language of the Constitution nor the statements made in the cases construing this provision justify the conclusion that the six months' residence in the district or county is waived as a qualification for voting in state elections.

---
[1] If the voter has the six months' residence in the district, he will be entitled to vote for statewide offices regardless of whether an office of that district is being voted on at the election. For example, a person who has resided in a state senatorial district for six months may vote for state offices in a year for which no election for State Senator is held in the district.

Honorable A. W. Walker, page 9 (WW-952)

Texas is not alone in denying a voting right to persons who do not meet both state and local residence requirements. In every other State, in addition to residence in the State one must also have resided within a county or an election precinct for a required length of time ranging from 30 days to one year, with approximately half of the States requiring 3 months or longer.[2] Smith, Voting and Election Laws, supra, pp. 15-19. That author makes the following comment:

"Although no one would recommend abandonment of residence requirements altogether, it is often contended by responsible critics that some state regulations are overly stringent. It is estimated, for instance, that over five percent of the American voting population is unable to meet the residence requirement in most elections and the implications of such widespread disfranchisement in a democratic society cannot be ignored. One has only to look at the statistics of population movement in the United States, especially during and since the second World War, to know that the problem of disfranchisement of sizable portions of the electorate can only become more acute unless residence requirements are reduced to reasonable time limits."

We are keenly aware of the seeming inequity of denying to citizens who meet the state residence requirement the right to vote for statewide officers because they have not resided in some one locality within the State for a period of six months. But to hold that a person may vote for statewide offices on the basis of one year's residence in the State without regard to the length of residence in the district or county, it would be necessary to ignore the second residence condition. However harsh or unreasonable this condition may be, the plain requirements of the Constitution cannot be ignored. Relief must come through amendment of the Constitution. It is our opinion, and you are so advised, that a person who does not meet the requirement for six months' residence in the district or county is not entitled to vote for any office in the general election.

---

[2] California and Wisconsin permit new residents of the State to vote in presidential elections with less than the normal residence requirements, and Connecticut permits former residents to vote by absentee ballot in presidential elections until they become electors in the State of their new residence.

Adverting to the category of voters who have six months' residence in a district but not in the county, we have noted that Article 5.15 of the Election Code omits the words "district or" in making provision for voting by persons who have changed their residence since obtaining their poll tax receipts or exemption certificates. This statute now reads as follows:

"Art. 5.15. Removal to another county or election precinct

"If a citizen after receiving his poll tax receipt or certificate of exemption, removes to another county or to another election precinct in the same county, he may vote at an election, general, special, or primary, in the precinct of his new residence in such other county or precinct by presenting his poll tax receipt or certificate of exemption or his affidavit of its loss to the precinct judges of election, and state in such affidavit where he paid such poll tax or received such certificate of exemption, and by making oath that he is the identical person described in such poll tax receipt or certificate of exemption, and that he then resides in the precinct where he offers to vote and has resided for the last six (6) months in the county in which he offers to vote and twelve (12) months in the State. But no such person shall be permitted to vote in a city of ten thousand (10,000) inhabitants or more, unless he has first presented to the tax collector of his residence a tax receipt or certificate, not less than four (4) days prior to such election or primary election or made affidavit where he paid such poll tax or received such certificate of exemption; and the collector shall thereupon add his name to the list of qualified voters of the precinct of his new residence; and unless such voter has done this and his name appears in the certified list of voters of the precinct of his new residence, he shall not vote."

The deletion of reference to residence in the district raises two questions: (1) what form of oath shall the election judge require of the voter, and (2) must the voter who has moved into a city of 10,000 or more inhabitants comply with the requirement for having his name placed on the list of qualified voters.

On the first question, it is our opinion that the election judge should require the voter to make the oath

required in this article, substituting "district" for "county". The election judge should mark out on the voter's ballot all offices for which he is not entitled to vote, before permitting the voter to mark his ballot and cast his vote.[3]  In elections where voting machines are used, the clerk attending the machine should lock out the offices for which the voter is not entitled to vote before permitting him to close the curtains and cast his vote.  (Section 2 of Article 7.14, Election Code, requires that the machine "be so constructed that a voter cannot vote for a candidate or on a proposition for whom or on which he is not lawfully entitled to vote.")

On the second question, it is our opinion that the tax collector should add the voter's name to the list of qualified voters upon the voter's request and upon being satisfied that the voter has resided for six months in some district of which the county is a part.  While the oath which the voter makes at the polling place will disclose that he does not have six months' residence in the county, the tax collector may properly place a notation to this effect alongside the voter's name on the list of qualified voters.

With the deletion of "district", this statute leaves the tax collectors in a state of doubt as to their authority to add the names of voters who have not resided in the county for six months.  It also leaves the voters in doubt as to whether this statute is applicable to them.  "No such person" refers to any citizen who has moved to another county or election precinct after receiving his receipt or certificate, but it could be taken to refer only to such persons who have resided in the county for six months after the removal.  If the voter has attempted to comply with the requirement but the tax collector has refused to add his name in the belief that the statute does not authorize this action, we think it is clear that the election judge should nevertheless allow him to vote upon satisfactory proof of his qualifications as an elector and of the reason why his name does not appear on the list of qualified voters.  Att'y Gen. Op. V-1485 (1952). Election judges have authority to administer oaths for the purpose of obtaining such proof, and it would be advisable

---

[3]This procedure necessarily gives the election judge an opportunity to see the number on the ballot which the voter receives, contrary to the provision in Article 8.11 of the Election Code that the voter shall be allowed to take his own ballot without the number being known to the election judge.  However, we are of the opinion that the voter should not be furnished with a ballot which would enable him to vote a full ticket, and he must surrender this safeguard to the secrecy of his ballot if he wishes to vote.

for the election judge to preserve in affidavit form the voter's statement of the reason why his name is not listed.

Where the voter has made no attempt to have his name added to the list, the question becomes more difficult. While the failure of the Legislature to define intelligibly the requirements imposed upon the voter should not deprive him of his constitutional right to vote, we have come to the conclusion that persons with less than six months' residence in the county are reasonably put on notice that they must comply with this requirement, and a voter who fails to make application to the tax collector is not entitled to vote.

## SUMMARY

In order to be a qualified elector of this State, a person must meet both conditions of residence set out in Article VI, Section 2 of the Constitution; namely, residence of one year in the State next preceding the election, and residence the last six months in the district or county in which he offers to vote.

A person, otherwise qualified to vote, who has resided for six months in a defined district of the State which includes the county of his former residence and the county of his new residence, but has resided less than six months in the county of his residence at the time of the election, may vote for offices of the district and for all offices which are voted on throughout the State, but he may not vote for offices of districts in which he does not have the six months' residence or for county and precinct offices. A person who does not meet the requirement for six months' residence in the district or county is not entitled to vote for any office.

The only place a person may vote is in the county of his residence at the time of the election. Upon change of residence from one county to another, a person loses his right to vote in the county of his former residence even though he may be unable to vote in the county of his new residence.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Mary K. Wall*
Mary K. Wall
Assistant

Honorable A. W. Walker, page 13 (WW-952)

MKW:bh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

J. C. Davis, Jr.
Riley Eugene Fletcher
Robert H. Walls
Iola Barron Wilcox

REVIEWED FOR THE ATTORNEY GENERAL
BY:
        Leonard Passmore