

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

This Opinion
Modified Opinion
# O-575 8

August 29, 1952

Hon. Alwin E. Pape
County Attorney
Guadalupe County
Seguin, Texas

Opinion No. V-1518

Re: Procedure to dissolve a
consolidated county-line
district created in the
manner prescribed by Ar-
ticle 2806, V.C.S.

Dear Sir:

We refer to your request for an opinion from this office relative to the following submitted matter:

On March 2, 1940, the Cibolo Common School District No. 29, then wholly within Guadalupe County, and the Schertz Common County-Line School District No. 36, then situated part in Guadalupe and part in Bexar Counties, were properly consolidated in the manner prescribed by Article 2806, V.C.S. to form the Schertz-Cibolo Common County-Line Consolidated School District No. 29, comprising territory part in Guadalupe and part in Bexar Counties. This Schertz-Cibolo district has been operated as a consolidated county-line district since its creation. A public free school since that time and in 1951-1952 has been maintained in the district and its operation is contemplated for the 1952-1953 school term.

On July 9, 1952, a petition was filed with the County Judge of Guadalupe County. It reads in part as follows:

"We the undersigned residents and qualified voters of the Schertz-Cibolo Common County-Line Consolidated School District No. 29, situated in Guadalupe and Bexar Counties, Texas, do hereby respectfully request that you, in connection with the County Judge of Bexar County, Texas, call an election to be held by the qualified voters of the Schertz-Cibolo Common

County-Line Consolidated School District
No. 29 for the purpose of determining
whether said consolidated school district
shall be dissolved, as authorized by Ar-
ticle 2815 of Vernon's Revised Civil Stat-
utes of 1925, and such supporting statutes
as contained in Title 49, entitled Educa-
tion, and that in connection with the
County Judge of Bexar County, Texas, give
statutory notice of such election."

Thereon appear names of sixty-one (61)
residents and qualified voters of the Cibolo
vicinity, but none from the Schertz section
of the consolidated school district. No
such petition has been filed with the County
Judge of Bexar County, but one may be, con-
taining the same 61 names. No like petition
has been filed by the voters of the Schertz
vicinity, nor have they joined in any peti-
tion already filed or to be filed.

Questions: 1. Is there any statute which
provides for the dissolution of a county-line
consolidated school district where the dis-
trict operates a public sbhool therein?

2. Under the facts submitted and on the
quoted petition presented to the County
Judge of Guadalupe County, can this consoli-
dated county-line district be dissolved, and
the former Cibolo and Schertz districts re-
vert to their original status?

With reference to your first question, there are
only two statutes which provide for the dissolution of
consolidated school districts.

Article 2815-1, Vernon's Civil Statutes, enacted
in 1947, provides in part as follows:

"Section 1. Any county line school
district formed by the consolidation of two
or more school districts situated in two or
more counties after the effective date of
this Act may be dissolved by the procedure
hereinafter established, whenever the con-
solidated school district fails to operate
a public free school." (Emphasis added.)

This statute could have no application in the dissolution of the Cibolo-Schertz consolidated county-line district, under the facts submitted, for the right to dissolve granted in that law is limited to county-line consolidated districts that "fail to operate a public free school."

The other statute providing for the dissolution of consolidated school districts is Article 2815, V.C.S. It reads in part as follows:

"(a) Such consolidated districts may, in the same manner provided for their consolidation, be dissolved and the districts included therein restored to their original status, except that it shall not be necessary to provide polling places in each district. . . . No election for the dissolution of said consolidated districts shall be held until three (3) years have elapsed after the date of the election at which such districts were consolidated."

An examination of the legislative history concerning Articles 2815 and 2806, V.C.S. is necessary here to determine the meaning and scope of the phrase, "such consolidated districts."

Since 1909, when Section 3 of Article VII of the Constitution of Texas, was amended, the Legislature has been expressly authorized to provide, by general law, for the creation of school districts including territory in more than one county. Simpson v. Pontotoc Common County Line School District No. 31, 275 S.W. 449 (Tex. Civ. App. 1925, error ref.); Parks v. West, 102 Tex. 11, 111 S.W. 726 (1908).

Article 2815 has its origin in House Bill 121, Acts 38th Leg., 3rd C.S. 1923, ch. 13, p. 169. House Bill 121 was an amendatory law providing for the consolidation of school districts and their dissolution. It recites unchanged Section 1 of House Bill 148, Acts 36th Leg., 2nd C.S. 1919, ch. 65, p. 167, the first law authorizing the creation of consolidated school districts, and then adds a new paragraph providing for their dissolution.

Section 1 of House Bill 148, supra, as amended by House Bill 121 in 1923 reads in part as follows:

"Section 1.  When any number of con-
tiguous common school districts within this
State, desiring to consolidate for school
purposes, present a petition to the judge
of the county wherein such districts are
situated, signed by twenty or a majority of
the legally qualified voters of each dis-
trict so desiring to consolidate, the county
judge shall issue an order for an election
to be held in each of the common school dis-
tricts so petitioning, which election shall
be held on the same date.  The county judge
shall give notice of the date of such elec-
tions by publication of the order in some
newspaper published in the county, for
twenty days prior to the date on which such
elections are ordered, or by posting a
notice of such elections in each of the
districts, or by both such publication and
posted notices.  The Commissioners' Court of
the county in which such elections are held
shall at its next meeting canvass the returns
of such elections, and if the votes cast in
each and all districts show a majority in
favor of the consolidation of such common
school districts, the commissioners' court
shall declare such common districts consoli-
dated, and districts being contiguous ter-
ritory.

"It is herein provided that in the same
manner as is described in Section 1, common
school districts may be consolidated with
contiguous independent school districts,. . .

    " . . .

"It is herein further provided that in
the same manner as is described in Section
1, such consolidated school districts may be
dissolved and the districts included therein
restored to their original status, except
that it shall not be necessary to provide
for polling places in each of the districts
composing such consolidated districts; . . .
provided further that no election, as pro-
vided for in this section, for the dissolu-
tion of said consolidated districts shall
be held until three years have elapsed after

the date of the election at which such dis-
tricts were consolidated."

Clearly the dissolution provisions in House
Bill 121, supra, authorized any consolidated school dis-
tricts created in the manner prescribed in Section 1
of that law to dissolve in the same manner as created
under that law. No provision in that law can be found
which would preclude the consolidation of contiguous
school districts which were situated in adjoining
counties. It is addressed to "any number of contiguous
. . . school districts within this State."

In 1925, the consolidation and dissolution
provisions of House Bill 121 were separated and codified
into our Revised Civil Statutes, 1925, under Articles
2806 and 2815, to read as follows:

"Article 2806. Election to consolidate-
On the petition of twenty or a majority of
the legally qualified voters of each of sev-
eral contiguous common school districts pray-
ing for the consolidation of such districts
for school purposes, the county judge shall
issue an order for an election to be held on
the same day in each such district. The
county judge shall give notice of the date
of such elections by publication of the order
in some newspaper published in the county for
twenty days prior to the date on which such
elections are ordered, or by posting a notice
of such elections in each of the districts,
or by both such publication and posted notices.
The commissioners court shall at its next
meeting canvass the returns of such election,
and if the votes cast in each and all dis-
tricts show a majority in favor of such con-
solidation, the court shall declare such
common school districts consolidated. Com-
mon school districts may in like manner be
consolidated with contiguous independent
school districts, . . ."

"Article 2815. Dissolution. - Such con-
solidated districts may in the same manner
provided for their consolidation, be dis-
solved and the districts included therein
restored to their original status, exeept
that it shall not be necessary to provide

polling places in each district. . . . No
election for the dissolution of said consoli-
dated districts shall be held until three
years have elapsed after the date of the
election at which such districts were con-
solidated."

Thus, it is made apparent that the words "such
consolidated districts" appearing in Article 2815 mean
any consolidated district created in the manner prescribed
in Article 2806. Under Article 2815, such consolidated
districts may be dissolved in the same manner and under
the same procedure which authorized their creation, set
out in Article 2806, except that in the dissolution there-
of "it shall not be necessary to provide polling places
in each district."

Furthermore, Article 2815 remains unchanged,
but Article 2806 has been amended in House Bill 98, Acts
42nd Leg., R.S. 1931, ch. 106, p. 182, and House Bill
828, Acts 49th Leg., R.S. 1945, ch. 264, p. 416. In the
1931 amendment of Article 2806, there was inserted this
provision:

". . . provided further, that when it
is proposed to consolidate contiguous county-
line districts, the petitions and election
orders prescribed in this Act, shall be ad-
dressed to and issued by the  County Judge
of the county having jurisdiction over the
principal school of each district and the
results of the election shall be canvassed
and declared by the Commissioners' Court of
said county."

The tenor of this amendment is indicative that
the authority to consolidate contiguous county-line dis-
tricts already existed under those other provisions of
Article 2806 which authorize the consolidation of any
number of contiguous common or independent districts.
Its language is not such as reflects grant of power for
the first time. The amendatory provision appears to be
added merely to clarify the procedure to be followed
in the consolidation of any common or independent dis-
tricts which are county-line districts.

The 1945 amendment of Article 2806 inserted
this provision:

". . . Provided that if any such district or districts are situated wholly in a county other than the county or counties embracing any other such district or districts the petitions and election orders prescribed in this Act shall be addressed to and issued by the respective County Judges of the respective counties in which such districts respectively lie, each County Judge ordering the election for the district or districts in his county, and the Commissioners Courts of such respective counties shall canvass the returns and declare the results of the election in the district or districts of their respective counties. . . ."

This added amendatory matter more clearly constitutes simply another legislative enactment designed to clarify the procedure to be followed in consolidations of any contiguous common or independent school districts previously authorized in the manner prescribed in Article 2806.

But if there be any doubt as to the authority of contiguous districts wholly within adjoining counties of county-line districts to consolidate in the manner prescribed under Article 2806, the uncertainty is resolved in an enactment of 1927, Section 5b of House Bill 99, Acts 40th Leg., 1st C.S. 1927, ch. 84, p. 228, codified as Section 5b, Article 2742b, in Vernon Civil Statutes. Section 5b reads in part as follows:

"In the manner prescribed by . . . Article 2806 . . . providing for the consolidation of school districts by election, Common School and Common County-line School Districts may be consolidated, and Common School and Common County-line School Districts may be consolidated with a contiguous Independent District in the same or in an adjoining County; provided that when the proposition is to consolidate districts having territory in two or more adjoining Counties, the petitions and election orders prescribed in Article 2806 . . . shall be addressed to and issued by the County Judge of each County for and/in behalf of each district wholly in his County or over which his County has jurisdiction for administrative purposes, and the County

> Commissioners' Court of each County shall
> canvass the returns of the election in each
> district lying wholly within the County or
> under its jurisdiction for administrative
> purposes, and declare the results, as in
> the case of the consolidation of districts
> lying wholly within one County; and when the
> results are so declared the consolidation
> of the districts shall thereby become ef-
> fective."

Section 5b, supra, like the amendments of 1931 and 1945 to Article 2806 herein discussed, we believe may properly be regarded as legislative clarification of procedure to be had in the consolidation of certain kinds of school districts, whose authority to consolidate was earlier provided for in Article 2806. Section 13 of House Bill 99, supra, did not repeal Article 2806, nor is Section 5b of Article 2742b in conflict therewith.

In the light of the legislative history concerning Articles 2806 and 2815, as herein considered, it is our opinion that Article 2815, par. (a), V.C.S., authorizes the abolition of any consolidated school district created by election in the manner prescribed by Article 2806. Further, with respect to your first question, the Schertz-Cibolo Common County-Line Consolidated School District No. 29, created by the consolidation of a common district wholly within one county with a contiguous county-line district in the manner prescribed in Article 2806, it may be dissolved by an election in the manner prescribed in Article 2815, par. (a), V.C.S.

It is clear, of course, that we disagree with an overrule herein the statement made in Attorney General Opinion O-5758 (1944) that Article 2815 is applicable only to consolidated districts lying wholly within one county.

We consider now your second question. Under the facts submitted you state that the said Schertz-Cibolo consolidated district was created in the manner prescribed by Article 2806, V.C.S. Therefore, we assume that in 1940, a petition for the consolidation bearing the names of twenty or a majority of the qualified voters of the former Cibolo Common District was addressed to the County Judge of Guadalupe County and that a like petition bearing the names of twenty or a majority of the qualified voters of the former Schertz Common County-line School

District was addressed to the County Judge of Bexar County or Guadalupe County, whichever county had jurisdiction of that county-line district. Woodson Independent School Dist. v. State, 130 S.W.2d 1038 (Tex. Civ. App. 1940, error ref.); Hunt v. Trimble, 145 S.W.2d 659 (Tex. Civ. App. 1940, error ref.); Donaldson v. State, 161 S.W.2d 324 (Tex. Civ. App. 1942, error ref. w.o.m.). Compliance with Article 2806 would require that one or more petitons, signed by twenty or a majority of the legally qualified voters of each of the formerly existing districts be filed with the proper county judge or judges.

The provision in Article 2815 is that such consolidated districts may "in the same manner provided for their consolidation" be dissolved. In Consolidated Common School Dist. No. 5 v. Wood, 112 S.W.2d 231, 235 (Tex. Civ. App. 1937, error dism.), the court construes the quoted phrase as follows:

". . . The power to dissolve the consolidated district and thereby re-establish the formerly existing component districts is thus delegated upon the condition that it be done in the same manner provided for their consolidation. In other words, the Legislature in prescribing the several essential steps by which such delegated power should fully vest did so by reference to the procedure by which the consolidation was effected. It is not permissible, we think, to substitute any other, unless some other is expressly authorized, or excepted from the requirement that it be in the same manner as provided for consolidation. One such exception is made, which is that 'it shall not be necessary to provide polling places in each district.' That was a wholly unnecessary exception, unless it was deemed by the lawmakers that by proceeding to a dissolution 'in the same manner' would require as many different polling places as was required in the elections for consolidation. Therefore, if there was any doubt or uncertainty as to what was meant by the 'same manner provided for their consolidation,' the exception would seem to remove such doubt and make clear the meaning. It seems to us the general provision read in connec-

tion with the single exception compels the
conclusion that the 'same manner' would re-
quire one or more petitions, signed by
twenty or a majority of the legally quali-
fied voters of each of the formerly existing
districts; that the election be held at the
several polling places in each of said dis-
tricts or (under authority of the express
exception) at one polling place, but just as
was provided in Article 2807, with reference
to the two kinds of elections held at the
same place, that separate ballot boxes and
tally sheets, etc. be provided and that the
result or results of the several elections
be separately ascertained and declared.
The last-named provision shows that the
Legislature did not regard election and
polling places as synonymous.

"There is another consideration which
seems to us to favor such interpretation of
the phrase 'in the same manner provided for
their consolidation.' The steps prescribed
for consolidation quite clearly manifest the
policy that no such consolidation shall be
affected contrary to the will (expressed in
the elections) of any one of the districts.
Of any number of districts involved in a
proposed consolidation the unanimous will of
all, ascertained by elections separately
held, is required. But if the construction
of these statutes contended for by the plain-
tiffs be correct, then a contrary policy is
manifest in the provisions of the dissolu-
tion of consolidated districts. Under that
construction it would be possible to dissolve
a consolidated district by the will of the
voters in the territory of a single district
which went into the consolidation, although
contrary to the will, if separately expressed,
of all the other districts involved in the
consolidation. We can perceive no reason
why one policy should prevail in consolida-
tions and a contrary policy in dissolutions."

In the instant matter, the petition for a dis-
solution election filed with the County Judge of Guada-
lupe County on July 9, 1952, contains the names, you
state, of legally qualified voters residing only in the

Cibolo area of the consolidated district. Since the former Cibolo district was wholly located in Guadalupe County and under the jurisdiction of that county, the petition, insofar as qualified voters of the Cibolo area is concerned, appears to be in compliance with the requirements of Article 2815 and 2806. But it is insufficient and could not be acted upon by the County Judge of Bexar County or the County Judge of Guadalupe County for the Schertz area of consolidated district (if the former Schertz county-line area was under the jurisdiction of the Guadalupe County) because it does not contain the names of twenty or a majority of the qualified voters residing now in the Schertz area. Popnoe v. Corbin, 215 S.W.2d 197 (Tex. Civ. App. 1948).

Accordingly, it is our opinion that under the laws stated and the facts submitted, a proper election for the dissolution of the Schertz-Cibolo Common County Line Consolidated School District No. 29 may not be had based alone on the petition herein considered.

## SUMMARY

Under Article 2815, par. (a), V.C.S., the Schertz-Cibolo Common County Line Consolidated School District No. 29 may be dissolved by an election held in the same manner it was consolidated, as prescribed in the provisions of Article 2806, V.C.S., except that it is not necessary to provide polling places in each former district consolidated.

Such Schertz-Cibolo county-line district could not properly be dissolved in an election called and based alone on the petition, dated July 9, 1952, it not containing the names of twenty or a majority of the legally qualified voters from each of the districts consolidated. Consolidated Common School Dist. No. 5 v. Wood, 112 S.W. 2d 231 (Tex. Civ. App. 1937, error dism.)

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant
Charles D. Mathews
First Assistant

By Chester E. Ollison
Assistant