**Ex parte Jerry Lee ROSS.**

**No. 49856.**

Court of Criminal Appeals of Texas.

April 16, 1975.

Rehearing Denied May 14, 1975.

Billy Britt Jarvis, Spearman, for appellant.

Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a post-conviction habeas corpus application.

The petitioner was convicted upon his plea of guilty on September 26, 1974, in the County Court of Hansford County for the misdemeanor offense of driving an automobile upon a public highway while under the influence of intoxicating liquor.[1] The petitioner filed his habeas corpus application in the 84th Judicial District Court of Hansford County, alleging that the manner in which his trial was conducted deprived him of his due process and equal protection constitutional safeguards.

Following an evidentiary hearing the district court entered findings of fact and conclusions of law.

The court found that although the petitioner was indigent at the time of his conviction and was not represented by counsel, he voluntarily waived his right to counsel and proceeded to trial unrepresented. The court further found that the petitioner orally waived his right to trial by jury, and prior to trial was fully advised of the nature and consequences of his plea and the possible punishment. The court also made a finding that the judicial officer who tried the petitioner's case, a non-attorney judge, was fair and impartial and did not conduct his court in such a way as to deny the petitioner a fair and impartial hearing or to discourage him from exercising his right to assistance of counsel. The court found that the complaint upon which the petitioner was tried did not contain any specific allegations concerning the mental state of the petitioner at the time of the commission of the offense. Finally, the court found that sworn testimony was introduced to support the allegations made against the petitioner.

The district court denied the habeas corpus application on the ground that the petitioner was tried in accordance with the applicable constitutional and statutory provisions of law. It concluded that the petitioner failed to establish by a preponderance of the evidence the actionable portions of his application.

The petitioner urges five (5) grounds of error.

In his first ground of error the petitioner contends that the district court erred in concluding that he received a fair and impartial trial before a disinterested hearing officer. The petitioner complains that since the trial judge was also the chief administrator for the county, as well as the presiding officer of the county commissioner's court, he was vitally interested in county expenditures, including the appointment of counsel for indigents. Contending that an alleged conflict between the judge's executive and judicial functions existed, the petitioner claims that such conflict prevented the judge from being impartial and disinterested in the outcome of the case.

■ Where a judge has a direct, personal, and substantial pecuniary interest in reaching a verdict against the defendant, due process of law is deprived. Tumey v. Ohio, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927). However, the mere union of executive and judical power in him cannot be said to violate due process of law. Tumey v. Ohio, supra, 273 U.S. at 534, 47 S.Ct. 437; Ward v. Village of Monroeville, Ohio, 409 U.S. 57, 60, 93 S.Ct.

1. See Article 6701*l*–1, Vernon's Ann.Civ.St.

80, 34 L.Ed.2d 267 (1972). The test used to determine whether due process is offended is whether the judge's situation is one "which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused." *Ward,* supra, 409 U.S. at 60, 93 S.Ct. at 83, quoting from *Tumey,* supra, 273 U.S. at 532, 47 S.Ct. 437.

The petitioner contends that the facts of his case show a deprivation of due process under authority of *Ward,* supra. In the *Ward* case, a major part of the village's income was derived from fines, forfeitures, costs, and fees imposed by the mayor in the mayor's court. As well as wide executive authority, the mayor had limited judicial authority to sit in cases of ordinance violations and certain traffic offenses. The record disclosed that yearly from 35% to 50% of the total village revenue was contributed as fines from the mayor's court. Therefore, the Supreme Court concluded that since the mayor's executive responsibilities for village finances might make him partisan to maintain the high level of contribution of the mayor's court, the petitioner's due process right to a fair and impartial hearing before a disinterested hearing officer had been violated.

■ The petitioner's reliance on *Ward,* supra, is misplaced. Not only does the record in the present case fail to establish a fact situation similar with that in Ward,[2] but the very proposition upon which *Ward* and *Tumey* are based, i. e., the possibility that the judge has a direct, personal, and substantial interest in reaching a conclusion adverse to the defendant, is absent. The petitioner does not allege that the judge's alleged financial interest in

county affairs affects his determinations of guilt or innocence, but rather that his interest in saving the county money leads him to discourage or deny the appointment of counsel to indigents. As can be seen, the crux of his argument goes not to the impartiality of the hearing officer, but rather to the possibility of denial of effective assistance of counsel.

We find that the petitioner has failed to show a reasonable probability that the judge's interest in the economic and financial affairs of the county caused him to deny the petitioner effective assistance of counsel. As will be discussed later in this opinion, there is ample proof in this case that the petitioner was informed of both his right to counsel and his right to appointed counsel if he were indigent.

In his second ground of error the petitioner contends that the district court erred in concluding that he was tried in accordance with applicable statutory law, and urges that the complaint upon which his conviction was founded failed to allege his culpable mental state, thereby making his conviction void.

■ The offense for which the petitioner was convicted, driving an automobile upon a public highway while under the influence of intoxicating liquor, is contained in Article 6701*l*-1, Vernon's Ann.C.S. This statute was transferred verbatim and without reenactment from Article 802, Vernon's Ann.P.C., pursuant to the authority granted by Section 5 of Acts, 63rd Leg., Ch. 399. This court has held that the offense of "driving an automobile upon a public highway while intoxicated" consists of two elements; intoxication and driving upon a highway in such condition. Snider v. State, 165 S.W.2d 904 (Tex.Cr.App. 1942). A criminal or unlawful intent is not an essential element of the offense.

2. The record in the present case was simply not developed fully enough to reveal the exact extent of the county judge's executive authority and duties. The testimony of the judge that he spends most of his time on ad-

ministrative duties and is the chief administrator of the county is simply too vague to delineate the exact parameters of his executive functions.

Joiner v. State, 161 Tex.Cr.App. 526, 279 S.W.2d 333 (1955).

The petitioner argues that a reading of Section 1.03(b)[3] in conjunction with Section 6.02,[4] Vernon's Ann.P.C., makes it clear that the strict liability offenses are eliminated except where " . . . the definition plainly dispenses with any mental element," and therefore the failure of the State to plead and prove his culpable mental state renders his conviction void.

The issue which must be resolved is whether the Legislature through enactment of Sections 6.02 and 1.03(b) of the new Texas Penal Code intended to require proof of a culpable mental state in the offense of driving while intoxicated. First of all, if such was their intention, it seems strange that they would implement the same in the awkward manner the petitioner suggests. It would have been much easier to merely include the requirement of proof of a culpable mental state by amending the statute when it was transferred from Article 802, Vernon's Ann.P.C., to Article 6701*l*–1, Vernon's Ann.C.S.

In addition to the above observation, there is another reason why we find no merit in the petitioner's argument. An examination of other sections of the Penal Code gives one insight into the Legislature's attitude concerning intoxication. Section 8.04 deals with intoxication, defining such as *"disturbance of mental* or physical *capacity* resulting from the introduction of any substance into the body."[5]

(Emphasis Added). Voluntary intoxication does not constitute a defense to the commission of a crime,[6] but evidence of temporary insanity caused by such intoxication may be introduced by the accused in mitigation of the penalty attached to the offense for which he is being tried.[7] Section 19.05, creating the offense of Involuntary Manslaughter, provides that a person may commit such offense in either of two ways: either he recklessly causes the death of another individual; or by accident or mistake when operating a motor vehicle while intoxicated, he causes the death of another person by reason of such intoxication. As defined in Section 19.05(b), "intoxication" means "that the actor does not have the *normal use* of his *mental* or physical *faculties* by reason of the voluntary introduction of any substance into his body." (Emphasis Added).

By consideration of Sections 8.04 and 19.05 of the new Penal Code, it is apparent that the Legislature never intended to require proof of the culpable mental state of a person charged with an offense where one of the essential elements is voluntary intoxication. As can be seen by reviewing Section 19.05, involuntary manslaughter can be established without proof of a culpable mental state; proof that the accused caused the death of a person by reason of operating a motor vehicle while intoxicated is sufficient.

It is common knowledge that intoxication temporarily destroys faculties es-

---

3. Section 1.03, Vernon's Ann.P.C., provides:
   "(b) The provisions of Titles 1, 2, and 3 of this code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code."

4. Section 6.02, Vernon's Ann.P.C., provides:
   "(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.
   "(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility. . . . ."

5. Section 8.04(d), Vernon's Ann.P.C.

6. Section 8.04(a), Vernon's Ann.P.C.

7. Section 8.04(b), Vernon's Ann.P.C.

sential to safe driving, Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952), and we cannot in good conscience speculate that the Legislature failed to recognize that which human experience has shown. Examination of the definitions of "intoxication" contained in the new Penal Code shows that the Legislature recognized that intoxication impairs mental faculties. By enactment of Section 8.04(b), allowing evidence of temporary insanity caused by intoxication to be introduced in mitigation of punishment, it is apparent that they realized that intoxicated persons often act abnormally.

We hold that the Legislature by enactment of Sections 1.03(b) and 6.02 of the new Penal Code did not intend to require proof of a culpable mental state in prosecutions under Article 6701*l*–1, Vernon's Ann.C.S. The petitioner's second ground of error is overruled.

In his third ground of error the petitioner contends that the district court erred in concluding that his trial before a non-attorney judge was not a violation of his due process rights. The petitioner cites as authority for his position the recent case of Gordon, et al. v. The Justice Court for the Yuba Judicial District of Sutter County, 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72 (1974), wherein the California Supreme Court held that permitting non-attorney judges to preside over criminal trials for offenses punishable by jail sentences is a violation of due process unless the accused or his counsel waives the right to have an attorney judge preside.[8] The court reasoned that an accused's right to assistance of counsel would have little meaning unless his counsel's arguments are heard by a judge qualified to comprehend and utilize

the arguments, and held that so long as a reasonable likelihood exists that a non-attorney judge will be unable to afford an accused a fair trial, due process requires that only an attorney judge conduct the trial.

It is apparent that by its ruling the court equated competency of a judge with the status of being an attorney. Despite so holding, the court apparently realized the unreliability of its own equation, for it stated, quoting from a law review article on the subject:

"The great majority of the law justice court judges now serving in California have demonstrated that nonlawyers who are interested, competent and dedicated to the work of the courts can perform an important role in the efficient administration of justice." 115 Cal.Rptr. at 639, 525 P.2d at 79.

Our research on this issue fails to disclose any other court with views consistent with those of the California Supreme Court. We note that several courts have expressly held that a criminal trial before a non-attorney judge is not a denial of due process. See Ditty v. Hampton, 490 S.W.2d 772 (Ky.1972); City of Decatur v. Kushmer, 43 Ill.2d 334, 253 N.E.2d 425 (1969); State v. Lynch, 107 Ariz. 463, 489 P.2d 697 (1971), *in banc*.

In rejecting the contention that trial of a criminal case before a non-attorney judge violates due process, we view with favor the position stated by the Kentucky Court of Appeals in Ditty v. Hampton, supra, 490 S.W.2d at 775, wherein it stated:

"The function of the court is not to defend the accused, or to represent him,

---

8. The *Gordon* case dealt with appeals from the denial by a superior court of extraordinary pre-trial relief attacking the constitutionality of allowing non-attorney justices of the peace to preside over criminal trials of offenses punishable by jail sentences. The qualifications for justice of the peace in California are that the applicant must be either: a member of the State Bar; or have passed

a Judicial Council qualifying examination; or have been an incumbent at the time of the Reorganization Act of 1950. The court noted that as of March, 1974, there were 215 authorized judgeships in justice courts: 81 were held by attorneys; 108 were laymen who had passed qualifying exams; 19 were laymen incumbents from the old system; and there were 7 vacancies.

but to decide fairly and impartially. An accused needs counsel to defend him, as pointed out in Gideon v. Wainwright, because the government employs lawyers to prosecute him—because our system of criminal justice is an adversary system. But the judge is not one of the accused's adversaries, and is not there either to defend or to prosecute him. So the fact that the accused needs a lawyer to defend him does not mean that he needs to be tried before a lawyer judge."

There is no constitutional or statutory requirement in Texas that a county judge be an attorney. The only qualification concerning legal knowledge or training is that a county judge be "well informed in the law of the State." Tex.Const., Art. 5, Sec. 15, Vernon's Ann.Stat. See also Article 1927, Vernon's Ann.C.S. It has been held that "well informed in the law of the State" does not mean that county judges need be lawyers. Ex parte Craig, 150 Tex.Cr.App. 598, 193 S.W.2d 178 (1946); Little v. State ex rel. Parsell, 75 Tex. 616, 12 S.W. 965 (1890). We note that the other courts have construed constitutional qualifications that judges be "learned in the law" to mean either admitted or entitled to be admitted without examination to practice as an attorney in the State. See In re Scarrella, 221 N.W.2d 562 (Minn. 1974); State ex rel. Chavez v. Evans, 79 N.M. 578, 446 P.2d 445 (1968); Opinion of the Justices, 279 Ala. 38, 181 So.2d 105 (1965). However, the Texas Constitution delineates different qualifications for higher judges, including the requirement that they be attorneys.[9] As the court noted in Little v. State ex rel. Parsell, supra, 12 S. W. at p. 967:

"It is apparent that county judges were not required to be lawyers, because that qualification is expressly provided by the constitution for judges of the higher courts."

If the framers of our Constitution had intended for county judges to be attorneys, it is apparent that they would have expressly so provided, as they did in the qualifications for judges of the higher courts.

We are unwilling to hold that due process is offended by trial before a non-attorney judge for a criminal offense punishable by imprisonment. The petitioner's third ground of error is overruled.

In his fourth ground of error the petitioner contends that the district court erred in concluding that he knowingly and intelligently waived his right to counsel at trial.

It is well settled that an accused may knowingly and voluntarily waive his right to counsel. Argersinger v. Hamlin, 407 U.S. 25, 37, 92 S.Ct. 2006, 2112, 32 L. Ed.2d 530, 538 (1972); King v. State, 473 S.W.2d 43, 49 (Tex.Cr.App.1971); Carey v. State, 455 S.W.2d 217 (Tex.Cr.App. 1970); Sanchez v. State, 454 S.W.2d 210 (Tex.Cr.App.1970). Though a written waiver is desirable, there is no requirement that the right to counsel can be waived only in writing.

The record of the trial proceedings contains no statement of facts, but it does contain two written instruments which shed some light on this issue. The first instrument is a printed form informing the accused of his rights as required by Article 15.17, Vernon's Ann.C.C.P. This form, signed by the petitioner, tends to establish that he knew of his right to counsel and right to have counsel appointed if he were indigent. The second instrument, the judgment of the trial court, contains a printed form recital that the petitioner was informed in open court of his right to counsel and his right to appointment of counsel if he were financially unable to employ counsel, and thereafter he expressly waived his rights to counsel and the appointment of counsel. Though these instruments are not conclusive proof that the petitioner knowingly and intelligently waived his right to counsel, they do tend to establish such fact.

9.  See Tex.Const., Art. 5, Secs. 2, 4, 6, and 7, Vernon's Ann.Stat.

Examination of the testimony in district court at the hearing on this application for habeas corpus reveals that the petitioner knowingly and voluntarily waived his right to counsel. The prosecutor at trial, Mr. Blackburn, testified that the court advised the petitioner of his right to counsel and his right to have counsel appointed if he were indigent, and the petitioner replied that he did not want a lawyer. Mr. Blackburn also testified that although no hearing on indigency was conducted, the petitioner stated that he did not wish the court to appoint a lawyer to represent him.

Highway Patrolman Sanders, who was also present during the trial proceedings, testified that the court advised the petitioner of his rights to counsel and appointed counsel. He also testified that the petitioner never requested to either have a lawyer present or have the court appoint one to represent him, but instead stated that he wanted to "go ahead and get it tried and get it over with."

Judge Lee, who presided over the petitioner's trial, testified that he read the petitioner his rights as required by Article 15.-17, Vernon's Ann.C.C.P., prior to entry of his plea. He testified that he asked the petitioner if he wanted an attorney and told him that an attorney would be provided if he could not afford one, and stated that the petitioner replied that he did not want an attorney but wanted to go ahead and get the trial over with.

The most damaging testimony to the petitioner's contention was elicited from the petitioner himself on cross-examination. He testified that the trial court advised him of his rights to counsel and appointed counsel, but he answered the court that he did not want an attorney and requested to "go ahead and try this thing without a lawyer." The petitioner also acknowledged that he had stated at trial that he was entering his plea because he was guilty, and that the only reason he was pursuing this habeas corpus application was because his driver's license had been revoked.

The State offered proof of one prior driving while intoxicated offense committed in July, 1969 in Hutchinson County for which the petitioner was placed on probation. It also elicited from the petitioner during cross-examination admissions of numerous other arrests in Kansas and Texas for various misdemeanor offenses over the period of the previous eighteen years.

The following testimony of the petitioner conclusively shows both a knowing and intelligent waiver of his right to counsel, and his familiarity with trial proceedings:

"Q. No one forced you to say you did not want a lawyer, did they?

"A. No.

"Q. That was on your own free will, wasn't it?

"A. Yes.

"Q. Of your own choosing?

"A. Yes.

"Q. At the time you said you did not want a lawyer, you knew you could have one, knew you could have one appointed if you couldn't afford one, right?

"A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. But you've been in trouble quite a bit with the law, haven't you? There's six or eight times that you say you've been arrested for something.

"A. Over a period of 20 years.

"Q. Yeah, I realize it has been since 1956 or so, 18 years, something like that, but the point is you've been in trouble with the law before, and you were aware of your rights when you were arrested each time, weren't you?

"A. Yeah.

"Q. Excuse me?

"A. Yes."

■ The record shows that the thirty-four year old petitioner had previous experience with law enforcement officers and misdemeanor trials, during at least one of which he had waived counsel. It is proper to consider such previous experience with criminal proceedings in determining whether the waiver of counsel was knowingly and intelligently made. Nash v. State, 477 S.W.2d 557 (Tex.Cr.App.1972). In the present case the trial court clearly informed the petitioner of his right to counsel and determined that he instead wished to exercise his right to a speedy trial without assistance of counsel. See Carr v. State, 475 S.W.2d 755 (Tex.Cr.App.1972).

The petitioner's fourth ground of error is without merit.

In his final ground of error the petitioner contends that the district court erred in failing to find that the differing requirements for waiver of trial by jury in felony and misdemeanor prosecutions deprived him of his due process and equal protection rights. More specifically, he challenges the reasonableness of the distinction between requiring the assistance of counsel before accepting an accused's waiver of trial by jury in a non-capital felony prosecution [10] and the absence of such requirement in misdemeanor prosecutions.[11]

■ At common law, one accused of a felony could not waive his right to a jury trial, and in some jurisdictions this rule still remains. See 50 C.J.S. Juries § 86; 47 Am.Jur.2d, Jury, Sec. 61. In the many jurisdictions which allow waiver of trial by jury in felony prosecutions, the waiver is authorized either by constitutional or statutory authority. See C.J.S., *id.*; Am.Jur.2d, *id.* at Sec. 75. There exists no federal constitutional provision which prohibits an accused from knowingly and intelligently waiving his right to trial by jury in a felony prosecution. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); Adams v. United States, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

From our research, it appears that the Texas requirement of representation by counsel in a non-capital felony prosecution prior to acceptance of a waiver of trial by jury is unique. In Adams v. United States supra, 317 U.S. at p. 278, 63 S.Ct. 236, the Supreme Court stated that it found nothing in either the Constitution, or the great historic events that gave rise to it, to require that unless a person is represented by an attorney he cannot freely and understandingly waive the right to a jury trial. We note that in federal criminal prosecutions the accused may waive in writing a trial by jury, subject to approval of the court and consent of the government, and he need not be represented by counsel before doing so. See Fed.Rules Cr.Proc., rule 23(a), 18 U.S.C.

By reviewing the predecessor statutes to Article 1.13, Vernon's Ann.C.C.P.,[12] one is

---

10. Article 1.13, Vernon's Ann.C.C.P., requires assistance of counsel prior to making a written waiver of trial by jury in a non-capital felony prosecution; a jury trial cannot be waived in a capital felony prosecution.

11. Article 27.14, Vernon's Ann.C.C.P., provides that in misdemeanor prosecutions either the accused or his attorney may waive trial by jury. There is no requirement that the waiver be written, nor is there any requirement that the court appoint an attorney to represent an accused who does not have one prior to accepting the waiver.

12. Article 1.13, Vernon's Ann.C.C.P., provides:
"The defendant in a criminal prosecution for any offense classified as a felony less than capital shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court and the attorney representing the State. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the State shall be in writing, signed by him, and filed in the papers of the cause before the defendant enters his plea. Before a defendant who has no attorney can agree to waive the jury, the court must appoint an attorney to represent him."

able to trace the development of its present requirements. Article 23 of the 1879 Code of Criminal Procedure followed the common law rule and provided that the accused in a criminal prosecution for any offense could waive any right secured to him by law *except* the right of trial by jury in a felony case. This statute was reenacted as Article 22 in the 1911 Code of Criminal Procedure, and as Article 11 in the 1925 Code of Criminal Procedure. This court upheld the prohibition against waiver of a jury trial in a felony case. See Frier v. State, 108 Tex.Cr.App. 379, 1 S.W.2d 306 (1928); Hawk v. State, 115 Tex.Cr.App. 25, 27 S.W.2d 178, 179 (1930).

In 1931, two amendments were added to the 1925 Code of Criminal Procedure, and thereafter it became possible for an accused to waive a jury trial in a non-capital felony prosecution. An amendment to Article 11 provided that the accused could waive all rights "except the right of a trial by a jury in a felony case *when he enters a plea of not guilty.*" (Emphasized words were added by the amendment.) A second amendment, the creation of Article 10a, provided that in any felony offense less than capital the accused had the right upon entering a plea of guilty to waive the right of a jury trial. This waiver had to be made in person by the accused in open court; it could be made only with the consent of the court and approval of the State's attorney; and it could be made only after an accused who was not represented by counsel was appointed counsel by the court.

The present Article 1.13, supra, differs little from its predecessor, Article 10a, the major difference being that the former requires the waiver to be written where the latter did not.

■ This court has consistently held that the provisions of Article 1.13, and its predecessor Article 10a, are mandatory; before a defendant who has no attorney can agree to waive a jury trial in a non-capital felony, the court must appoint an attorney to represent him or the resulting conviction will be void. Ex parte Jenkins, 433 S.W.2d 701 (Tex.Cr.App.1968); Ex parte Strother, 395 S.W.2d 629 (Tex.Cr.App.1965); Ex parte Prestridge, 373 S.W.2d 494 (Tex.Cr.App.1963); Ex parte Ross, 165 Tex.Cr.App. 246, 305 S.W.2d 958 (1957). The mandatory requirements of the statute apply whether the accused is indigent or not. Young v. State, 448 S.W.2d 484 (Tex.Cr.App.1970), at p. 485, footnote 1; Ex parte Burns, 441 S.W.2d 532 (Tex.Cr.App.1969); Ex parte Higginbotham, 382 S.W.2d 927 (Tex.Cr.App.1964).

■ The petitioner argues that the different procedures for waiving a jury trial in felony and misdemeanor prosecutions are unreasonable, and asks that we extend to misdemeanor defendants the right of counsel prior to the court's accepting a waiver of trial by jury. This we decline to do. This court is not in the business of passing legislation, and if the Legislature wishes to amend Article 27.14, supra, to include assistance of counsel prior to waiver, it may certainly do so.

We do not find, nor have we been cited any authority which holds that the right to assistance of counsel prior to waiver of trial by jury in a criminal case is a fundamental right under due process of law. We do not find that the Legislature's distinction between the procedure for waiver of trial by jury in felonies and in misdemeanors is either unreasonable or arbitrary.

The petitioner's fifth ground of error is overruled.

The relief requested is denied.