Thomas Carl **JOHNSON** and Robert Darrell **Stapp**, Appellants,

v.

The **STATE** of Texas, Appellee.

No. 04–81–00050–CR.

Court of Appeals of Texas, San Antonio.

April 29, 1983.

Discretionary Review Granted Sept. 21, 1983.

George A. Preston, Denton, for appellants.

Ronald L. Sutton, Junction, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

This case involves two joint appeals for burglary convictions. Appellant, Robert Darrell Stapp, received a twelve-year sentence, and appellant, Thomas Carl Johnson, was assessed a life sentence as a habitual.

The appellants were each indicted for burglary. The morning their trial was to begin, before jury voir dire, their jointly retained counsel advised the court,

> Your Honor, I've had a problem arise this morning. After conferring with my clients I've discovered that they have asked me to do a number of things that I do not feel ethical that I can do. I have informed them that I will not follow their instructions and they have fired me as their attorney. However, they have stated that they wish to proceed pro se. I would state for the record that since I have participated in the case and prepared it for trial, I will be willing to sit with the defendants to protect their procedural rights, if that is acceptable with the Court and the State's attorney.

The trial judge then verified with appellant Stapp that he had discharged his attorney

and wished to proceed pro se. The court explained the range of punishment to the appellant, and then cautioned him that there were certain rights that a non-lawyer would be unable to accomplish without some assistance. He further inquired as to the appellant's understanding of cross-examination of witnesses and jury selection. On at least five occasions, appellant Stapp assured the court that he understood the matters about which the judge was speaking. Though appellant Johnson had been present during the discussion with Stapp, the court directed additional questions to him, emphasizing that Johnson was facing the possibility of a life sentence. To the question as to whether or not he desired to proceed without counsel, appellant Johnson answered in the affirmative. The court then advised both appellants that he would require their previous attorney to be present to consult with them and to conduct the jury voir dire. The appellants were further advised that no evidence would be received by the court until the following day, and if either of them wished to contact or retain other counsel they would be given the opportunity to do so. Both appellants were free on bond at the time. There then followed the voir dire examination of the jury panel during which Mr. Hargrove, the previously retained attorney, conducted the questioning on the appellants' behalf.

The following morning, before any evidence was received, the court made the following inquiry of the appellants:

THE COURT: ... First of all, Mr. Stapp, yesterday I advised you that you had some extra time to obtain additional counsel if you so desired. Have you obtained additional counsel?

MR. STAPP: No, sir.

THE COURT: Is it you desire to proceed without counsel, with Mr. Hargrove acting in an advisory capacity?

MR. STAPP: Yes, sir.

THE COURT: Mr. Johnson, I want to ask you the same question. Have you obtained additional counsel?

MR. JOHNSON: No, sir.

THE COURT: Is it your desire still to proceed without counsel, with Mr. Hargrove acting in an advisory capacity?

MR. JOHNSON: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: All right. Mr. Stapp and Mr. Johnson, the State has pointed out, but first of all, I understand that Mr. Hargrove was retained counsel and that both of you are out on bond. However, should you not have funds with which to retain counsel and can show that you are not sufficiently able to retain counsel financially, that you have the right to have counsel appointed to represent you. Do you understand this, Mr. Stapp?

MR. STAPP: Yes, sir.

THE COURT: Mr. Johnson?

MR. JOHNSON: Yes, sir.

THE COURT: I assume, since you were able to retain Mr. Hargrove and that you are out on bond, that you are able to retain counsel but chose to proceed without counsel. Is that correct?

MR. JOHNSON: Yes, sir.

MR. STAPP: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: I think this is the order. We may change it, but I think the order in which we will proceed, is that during the State's case I will allow Mr. Sutton to call his witness and question his witness. I will accept objections both from Mr. Hargrove and from either defendant. In other words, either one of you may object to anything during the proceedings, rather than requiring the one person to make objections. Then when on cross-examination, let me suggest to the defendants, and you may do it otherwise. Let me suggest to the defendants that you allow Mr. Hargrove to do the cross-examination of the State witnesses, and if you have any additional questions you will be allowed to ask them, but handle your defense in any manner you see fit.

MR. JOHNSON: If we have other questions can we ask him? (Referring to Mr. Hargrove.)

THE COURT: Yes. You may be as liberal in asking questions as you need. You are not a lawyer and you are not prepared to understand the procedure.

MR. JOHNSON: Well, we are close to it.

During the trial that followed Johnson made an opening statement, he questioned the defense witnesses, and gave a jury argument at the end of the guilt phase of the trial. Stapp testified on both the guilt and punishment phases but declined to make an opening statement or give jury argument, even though he was given the opportunity to do so. Attorney Hargrove cross-examined the State's witnesses, made various objections throughout the trial, requested that the jury be polled after returning the findings of guilty, and argued for the defense on punishment. The record does not reflect what private consultations may have taken place between attorney Hargrove and the two appellants during the trial.

Appellants have filed very similar briefs containing identical grounds of error. Each contends that the trial court inadequately questioned and warned the appellants about their Sixth Amendment right to an attorney. The appellants rely on *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). That case involved a criminal defendant who requested that he be permitted to represent himself. The trial judge conducted a hearing on the defendant's ability to conduct his own defense and questioned him specifically about various rules of law. The judge ruled that Faretta had not made an intelligent and knowing waiver of his right to the assistance of counsel. The judge then forced him to accept, against his will, a State-appointed public defender. The Supreme Court held that this was a deprivation of Faretta's constitutional right to conduct his own defense. Appellants contend that *Faretta* establishes the minimum areas of inquiry that a trial court must explore before finding that a defendant has voluntarily and intelligently waived his right to counsel. This is a misreading of the holding in the case.

The Supreme Court said that if the circumstances set out in *Faretta* do exist, the trial court should find a knowledgeable waiver; the court did not hold that the absence of the *Faretta* inquiries should result in a finding of no waiver. The case holds that when an accused relinquishes the benefits associated with the right to counsel, he must do so

knowingly and intelligently . . . he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes open. . . . The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will.

422 U.S. at 835, 95 S.Ct. at 2541.

■ The trial judge here inquired into all that is required and more. He advised the appellants of the seriousness of the case and of their need for counsel and of their right to counsel. He inquired into their competence, questioned attorney Hargrove regarding their competence and inquired to their understanding of the case and the necessary procedures. He was aware of the appellants' prior experience with the criminal justice system, an area that he could appropriately consider in determining whether the waiver of counsel was knowingly and intelligently made. *Ex parte Ross,* 522 S.W.2d 214, 222 (Tex.Cr.App. 1975), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (1975). Though there was no suggestion that either appellant was indigent, the trial court advised them of their right to have appointed counsel if they could not afford to hire counsel. Throughout the preliminary questioning, the appellants repeatedly stated their desire to proceed without counsel. Though the waivers were made orally before the bench in open court, there is no Texas or Constitutional requirement that the waiver be executed in writing. *Faretta v. State,* 95 S.Ct. at 2541; *Webb v. State,* 533 S.W.2d 780, 785 (Tex.Cr. App.1976). Additionally, the trial court required attorney Hargrove to be present

throughout the trial in an advisory capacity. This is permitted and sometimes encouraged by the cases. *Faretta v. State,* 95 S.Ct. at 2541; *Wiggins v. State,* 520 S.W.2d 780, 782 (Tex.Cr.App.1975).

■ We believe that the trial court's precautions were adequate, and appellants' waivers were knowingly and intelligently made. Appellants' first ground of error is overruled.

Appellants' ground of error two assumes that the court's requiring attorney Hargrove to participate in the trial as an advisor actually made him appointed counsel. This would entitle Hargrove to ten days trial preparation or would require a waiver to the ten days.

■ The trial court never granted Hargrove leave to withdraw from the case. The judge merely relegated Hargrove from the status of attorney in sole charge of the case to that of an attorney assisting the appellants in defending themselves. This does not amount to a new appointment necessitating ten days preparation; therefore, no waiver of the ten day period was required. Tex.Code Crim.Proc.Ann. art. 26.04 (Vernon 1966). Assuming arguendo that Hargrove's change of status to an advisory capacity amounted to an appointment, there would still be no error presented. It is the actual preparation time and not the time of formal appointment that determines whether defendant has been given the mandatory preparation time for trial provided by article 26.04, Tex.Code Crim.Proc.Ann. *Henson v. State,* 530 S.W.2d 584, 585 (Tex.Cr.App.1975). According to the record, attorney Hargrove had represented the appellants since their arraignment March 8, 1979, and the trial began April 23, 1979. There was clearly adequate time for preparation. Appellant's ground of error number two is overruled.

Grounds of error three and four allege that the trial court erred in the manner in which the issue of the ownership of the burglarized building in the court's charge to the jury was submitted. The pertinent portions are as follows:

"Owner" means a person who has title to the property, possession of the property, whether lawful or not, or greater right to possession of the property than the defendant. "Possession" means actual care, custody, control or management of the property.

Now if you find from the evidence beyond a reasonable doubt that on or about the 5th day of January, 1979, in Menard County, Texas, (appellant) did enter a building not then open to the public, occupied, controlled, and in the possession of Ray Rayborn, hereinafter called the owner, without the effective consent of said owner, with the intent then and there to commit the offense of theft of personal property therein being, then you will find the defendant guilty as charged.

\*    \*    \*    \*    \*    \*

You are instructed that in the offense of burglary, the ownership of property may be alleged in the person who owns the property or in the person who has the care, custody, control or management of the property. If you find from the evidence beyond a reasonable doubt that Ray Rayborn had the care, custody, control or management of the building in question at the time and place the same was entered, if it was, then you are instructed that he would be a special owner thereof under the law.

If you find from the evidence that Ray Rayborn did not have the care, custody, control or management of the building in question at the time same was entered, if it was, or if you have a reasonable doubt thereof, then you will acquit the defendant.

Two witnesses testified that Ray Rayborn was the owner of Menard Lumber Company, and Rayborn himself, in response to the question of what his business or occupation was, said that, "I run Menard Lumber Company." The indictment alleged that the defendants did "intentionally and knowingly enter a building not then open to the public without the effective consent of Ray Rayborn, the owner."

The appellants' specific contention is that the jury charge explained the law of "special ownership" while the proof was that of ownership as a title holder. Under article 1.07(a)(24) and (28), Tex.Penal Code Ann. (Vernon 1974), the State may show ownership in any one of three ways: (1) title, (2) possession, or (3) a greater right to possession than appellants. Possession may be shown by evidence of actual care, custody, control or management. *McGee v. State,* 572 S.W.2d 723, 724 (Tex.Cr.App.1978). Tex.Code Crim.Proc.Ann. art. 21.08 (Vernon Supp. 1982–1983), permits the State to plead ownership as they did, regardless of which category the proof may fall in.

The references by the witnesses to Rayborn as the "owner" are not conclusive evidence that he held title to the property. Rayborn's testimony that "I run Menard Lumber Company," is certainly evidence of actual *management,* which equates to ownership by possession. The charge, as presented, was compatible with the evidence and the indictment.

Appellants additionally contend that the charge on "special ownership" was an impermissible comment on the weight of the evidence. The pertinent portions of the charge were virtually verbatim copies of the applicable portions of the Penal Code and Code of Criminal Procedure. Further, there was no objection made to any portion of the charge. Where no objection is made to the jury charge, nothing is preserved for review. *Mulchahey v. State,* 574 S.W.2d 112, 118 (Tex.Cr.App.1978). Grounds of error three and four are overruled.

The judgments of the trial court are affirmed.