

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-13-00380-CR

_____

**TARA CARSON LANE,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 249th District Court**
**Johnson County, Texas**
**Trial Court No. F46516**

_____

## MEMORANDUM OPINION

_____

In three issues, appellant, Tara Carson Lane, challenges her conviction for driving while intoxicated with a child passenger. *See* TEX. PENAL CODE ANN. § 49.045 (West 2011). Specifically, Lane asserts that the trial court erred by: (1) admitting the results of her blood test; (2) denying her request for a jury charge under article 38.23 of the Texas Code of Criminal Procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); and (3)

denying her motion for a direct verdict based on her argument that section 49.045 is unconstitutionally vague. We affirm.

## I. BACKGROUND

On May 5, 2012, Lane spent a Sunday evening at her mother's house in Joshua, Texas. While there, Lane consumed alcohol. Around 11:00 p.m., Lane got into her white, Yukon Denali along with her three children—all of whom were under fifteen years of age—and began driving northbound on SW Wilshire Boulevard toward her house in Burleson, Texas. Shortly thereafter, a 911 operator for the Burleson Police Department received a call from Crystal Stewart, who informed police that Lane was driving while intoxicated with her children in the car. Stewart purportedly provided additional identifying characteristics of Lane's vehicle and path of travel to allow police to intercept Lane prior to arriving home.

Officer Charles Garrett, a patrol officer with the Burleson Police Department, received a dispatch concerning Lane at approximately 11:15 p.m. and moved to respond to the call. Officer Garrett spotted a white, Yukon Denali traveling on SW Wilshire Boulevard and began to follow the vehicle. While behind the vehicle, Officer Garrett observed the driver engage in several Class C traffic violations while trying to negotiate a right turn onto John Jones Street. At trial, Officer Garrett described the traffic violations as such:

> Yes. As the vehicle got into the right-hand turn lane to turn south on John Jones, or 731, there's a solid white line that is considered a traffic control

device. It's a marking that directs the flow of traffic. The vehicle put its signal on and changed lanes and crossed a solid white line. That is a disregard of a traffic control device. The second clue I observed was at the same traffic light there's a designated stopping point. It's the white line that we all see at the intersection that protects the crosswalk. You're supposed to stop behind that line for the safety of pedestrians. Well, the vehicle failed to stop at the designated stopping point and went past it. As the vehicle turned right onto South John Jones, it did not turn into the first available lane of traffic. In Section 545 of the Traffic Code, it says a vehicle will turn as close as practical to the right-hand curb, which is the first available lane of traffic. The vehicle turned into the left-hand lane of traffic. After we turned on to John Jones, it's two lanes. The vehicle was in the left lane, and it failed to maintain a single lane of traffic twice in a very short distance. It swerved over within two lanes twice.

At this point, Officer Garrett activated his overhead lights and initiated a stop of the vehicle. After approaching the driver of the vehicle, who was later identified as Lane, and asking Lane for identification and proof of financial responsibility, Officer Garrett observed that Lane had slurred speech, a moderate odor of alcohol on her breath, and glassy, watery eyes. When asked if she had been drinking, Lane responded that she had two glasses of wine earlier. Officer Garrett then asked Lane to step out of the vehicle to perform field-sobriety tests. Lane complied.

During the horizontal-gaze-nystagmus test, Lane exhibited all six clues. On the walk-and-turn test, Lane exhibited four of eight clues. And on the one-leg-stand test, Lane exhibited three out of four clues. Based on the totality of the circumstances, Officer

Garrett placed Lane under arrest for driving while intoxicated with a child passenger and subsequently transported her to an intoxilyzer room at the Burleson Police Department.[1]

While in the intoxilyzer room, Officer Garrett read Lane the DIC-24 statutory warnings and asked for breath and blood samples. Lane refused to provide either. Thereafter, Officer Garrett transported Lane to the emergency room at the Texas Health Resource Hospital in Burleson to have her blood drawn. Two vials of blood were collected from Lane and subsequent testing revealed that Lane had a blood-alcohol level of 0.16—double the legal limit for driving.

Lane was charged with driving while intoxicated with a child passenger, a state-jail felony. *See* TEX. PENAL CODE ANN. § 49.045. At the conclusion of the evidence, the jury found Lane guilty of the charged offense and sentenced Lane to two years' incarceration in the State Jail Division of the Texas Department of Criminal Justice. The trial court accepted the jury's verdict, suspended the sentence, and placed Lane on community supervision for a period of five years with a $3,000 fine. This appeal followed.

## II.    ADMISSION OF BLOOD-TEST RESULTS

In her first issue, Lane complains about the admission of Exhibit 12, the blood-test results. Lane asserts that the trial court erred in admitting Exhibit 12 because "the

---

[1] Officer Garrett noted that Lane tried to pull away when he was trying to place handcuffs on her. He also recounted that Lane was agitated and upset at the time of her arrest.

warrantless intrusion into [her] body and the extraction of her blood does not fit within any of the above-mentioned exigent circumstances."

In objecting to Exhibit 12, Lane argued the following:

I would object to this, Your Honor, under the Fourth Amendment of the United States Constitution as being a violation of the right to be free from unreasonable searches and seizures.

I would object to it under Article 1, Section 9 of the mirror Texas Constitution because of the violation of the right to be free from unreasonable searches and seizures.

I'll just site [sic] Missouri v. McNeelly [sic] as—and I would also object under 38[.]23, or I would object because the proper protocol for seizing the blood without a warrant was not followed.  There's no proper order under 724.012.  And that should be enough.

However, earlier in the trial, Lane's trial counsel asked Officer Garrett about the results of the blood test.  Specifically, trial counsel asked the following:

Q [Trial counsel]:        What was the blood result, do you know?

A [Officer Garrett]:      Yes, sir, I do.

Q:                        Would you tell us what it was?

A:                        I'm sorry.  Did you say can I?  I can't hear you.

Q:                        Will you?

A:                        Yes, sir, I will.  0.16.

Q:                        No, you're playing games with me, I think.

A:                        No, sir.

Q: Well, I asked you will you and you said yes. I couldn't hear you. I apologize. I apologize then. What was the results of her test?

A: 0.16.

Q: What is that? 0.16 what? 0.16 what? What does that mean?

A: That means her blood alcohol level was .16.

Q: What does blood alcohol level mean?

A: It's how much alcohol she had per one hundred milliliters of blood.

The Court of Criminal Appeals has held that an appellant is in no position to complain of evidence that she herself developed. *See Garza v. State*, 397 S.W.2d 847, 849 (Tex. Crim. App. 1966) ("But appellant cannot introduce the same statement he claims to be inadmissible, use exculpatory parts of that statement as an affirmative element of his trial strategy, then when that evidence fails to convince the jury of appellant's innocence, re-assert his claim that the evidence should not have been admitted in the first place.") (citing *Henry v. Miss.*, 379 U.S. 443, 450-52, 85 S. Ct. 564, 568-69, 13 L. Ed. 2d 408 (1965)). Thus, because the substance of Exhibit 12—test results showing that Lane had a blood-alcohol level of 0.16—is the same as the information elicited from Officer Garrett by Lane's trial counsel on cross-examination, Lane is in no position to complain of the admission of Exhibit 12 into evidence. *See id.*; *Henry*, 379 U.S. at 450-52, 85 S. Ct. at 568-69; *see also Ohler v. U.S.*, 529 U.S. 753, 759, 120 S. Ct. 1851, 1855, 146 L. Ed. 2d 826 (2000)

(concluding that appellant waived his right to complain about evidence that he preemptively introduced); *Johnson v. State*, 981 S.W.2d 759, 760 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (same). Furthermore, we note that any error in admitting evidence is cured when the same evidence is admitted elsewhere without objection. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); s*ee also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Therefore, even if Exhibit 12 was inadmissible, any error in admitting the exhibit was cured because the substance of the exhibit was admitted elsewhere without objection. *See Lane*, 151 S.W.3d at 193; *see also Leday*, 983 S.W.2d at 718. We overrule Lane's first issue.

### III. THE JURY CHARGE

In her second issue, Lane asserts that the trial court erred by failing to issue an article 38.23 instruction in the jury charge because the evidence established that the blood evidence was obtained illegally under the Implied Consent Statute, rather than pursuant to a warrant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

### A. Applicable Law

A claim of jury-charge error is reviewed using the procedure set out in *Almanza*. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The first step is to determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Then, if

we find error, we analyze that error for harm." *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

> Article 38.23 of the Code of Criminal Procedure provides:
>
> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). In *Madden*, the Court of Criminal Appeals stated that a defendant's rights to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). Specifically, the *Madden* court mentioned the following:

> There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under Article 38.23(a):
>
> (1) The evidence heard by the jury must raise an issue of fact;
>
> (2) The evidence on that fact must be affirmatively contested; and
>
> (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.
>
> There must be a genuine dispute about a material fact. If there is no disputed factual issue, the legality of the conduct is determined by the trial

judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Id.* at 510-11.

## B.    Discussion

During the charge conference, Lane argued that Officer Garrett used a form that did not authorize a blood draw for driving while intoxicated with a child passenger and requested the following instruction:

Article 38[.]20. Excuse me. I would ask the charge that no evidence obtained by an officer or other person in violation of any provisions of the constitution or the laws of the State of Texas or the constitution or laws of the United States of America shall be admitted into evidence against the accused on the trial of any criminal case. There has—Article 1—or the Fourth Amendment of the United States Constitution, Article 1, Section 9 of the state constitution prohibit unreasonable searches and seizures. If you believe that the blood drawn was taken in violation of 724.012 of the Transportation Code, or if you have a reasonable doubt whether or not it was seized in violation of Section 724.012 of the Transportation Code, you will not consider the evidence of the blood draw.

The State responded that there was no factual issue that warranted an article 38.23 instruction. The trial court agreed and denied the requested instruction.

We, too, agree that there was not a disputed fact issue necessitating an article 38.23 instruction. At trial, Officer Garrett acknowledged that he used a form authorizing a mandatory blood draw under section 724.012 of the Texas Transportation Code that involved offenses under chapter 49 of the Texas Penal Code where the officer reasonably

believed that another person had died or would die as a result of the accident. Officer Garrett later admitted that he did not believe that anyone had died or was going to die in an accident involving an intoxicated driver. However, Officer Garrett testified that he believed that the form was applicable to all mandatory blood draws and that he was unsure whether a form existed for warrantless blood draws specifically tailored for offenses under section 49.045 of the Texas Penal Code. Given this testimony, there was not a disputed fact issue, but rather a legal question, regarding whether Lane's mandatory blood draw was illegal due to the form that Officer Garrett used.[2] Consequently, we cannot conclude that the jury charge was erroneous or that an article 38.23 instruction was required in this case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Barrios*, 283 S.W.3d at 350; *Ngo,* 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171; *see also Madden*, 242 S.W.3d at 509-11. We overrule Lane's second issue.

## IV.    LANE'S MOTION FOR A DIRECTED VERDICT

In her third issue, Lane asserts that the trial court erred by denying her motion for directed verdict because section 49.045 of the Texas Penal Code is unconstitutionally vague. Specifically, Lane complains that section 49.045 is facially unconstitutional because it does not contain a culpable mental state, though purportedly required by section 6.02 of the Texas Penal Code.

---

[2] The record does not reflect that Lane filed a pre-trial motion to suppress the results of the warrantless blood draw based on the form Officer Garrett used.

## A.    Applicable Law

A challenge to the trial court's denial of a motion for an instructed verdict or a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances.  *State v. Rousseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).  A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid.  *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

Whether a statute is facially unconstitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When the constitutionality of a statute is attacked, we begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id.* at 14-15. The burden normally rests upon the person challenging the statute to establish its unconstitutionality. *Id.* at 15. In the absence of contrary evidence, we will presume the legislature acted in a constitutionally-sound fashion. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

**B.      Discussion**

Section 49.045 of the Texas Penal Code provides that a person commits an offense if: (1) "the person is intoxicated while operating a motor vehicle in a public place"; and (2) "the vehicle being operated by the person is occupied by a passenger who is younger than 15 years of age." TEX. PENAL CODE ANN. § 49.045. A review of the plain language of the statute shows that section 49.045 does not specifically prescribe a culpable mental state. According to Lane, section 49.045 violates section 6.02(b) of the Texas Penal Code and, thus, is void for failing to prescribe a culpable mental state. Section 6.02(b) provides the following: "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." *Id.* § 6.02(b) (West 2011).

An analogous argument was addressed by the Court of Criminal Appeals in *Ex parte Ross*, 522 S.W.2d 214 (Tex. Crim. App. 1975). In that case, the defendant challenged his DWI conviction by arguing that section 6.02 required proof of a culpable mental state. *Id.* at 218. The Court of Criminal Appeals held that despite section 6.02, the State was not required to prove a culpable mental state in obtaining a DWI conviction. *Id.* at 218-19. Specifically, the court reasoned that the legislature did not intend to require proof of a culpable mental state for DWI when section 6.02 was enacted. *Id.* at 219.

Several other Texas courts have addressed arguments similar to Lane's—all finding it without merit. *See Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007) (noting that felony DWI does not require proof of a culpable mental state); *Lewis v. State*, 951 S.W.2d 235, 237 (Tex. App.—Beaumont 1997, no pet.) ("We also find it persuasive and hold proof of a culpable mental state is not required in DWI convictions."); *Sanders v. State*, 936 S.W.2d 436, 438 (Tex. App.—Austin 1996, pet. ref'd) ("However, like our sister courts, we believe *Ross* to be dispositive and join them in holding that the DWI statute does not require proof of a culpable mental state."); *Aguirre v. State*, 928 S.W.2d 759, 759-60 (Tex. App.—Houston [14th Dist.] 1996, no pet.) ("It has never been necessary to plead or prove scienter in a prosecution for driving while intoxicated. . . . If the offense of driving while intoxicated carried with it the burden of establishing a culpable mental state, the most inebriated and dangerous drivers would escape conviction by virtue of their diminished capacity to formulate a criminal intent. Because *mens rea* is inversely

proportional to the degree of a defendant's mental impairment, and it would be oxymoronic to require the State to show that a defendant possessed a criminal intent *and*, by virtue of his intoxication, had also lost the use of his mental faculties. . . . The object of the DWI statute is to prevent men, women, and children from being maimed or killed by intoxicated drivers. We do not believe the legislature intended to subvert this purpose by engrafting a culpable mental state onto the statute when it was transferred to Section 49.04 of the Penal Code." (emphasis in original)); *Chunn v. State*, 923 S.W.2d 728, 729 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd); *Reed v. State*, 916 S.W.2d 591, 592 (Tex. App.—Amarillo 1996, pet. ref'd) (concluding that the Legislature "did not intend to require proof of a culpable mental state for the offense of driving while intoxicated"); *see also Bigon v. State*, Nos. 03-05-00692-CR & 03-05-00693-CR, 2006 Tex. App. LEXIS 8756, at *10 (Tex. App.—Austin 2006) ("In this instance, felony DWI does not require proof of a culpable mental state. Nor does the felony charge of DWI with a child passenger require proof of a culpable mental state." (internal citations omitted)), *aff'd*, 252 S.W.3d 360 (Tex. Crim. App. 2008).

Because numerous Texas courts have concluded that DWI convictions do not require a culpable mental state, despite the language of section 6.02, we are not persuaded by Lane's argument that section 49.045 is void or unconstitutionally vague for failure to require a culpable mental state. *See Ex parte Lo*, 424 S.W.3d at 14-15; *Lomax*, 233 S.W.3d at 304; *Lewis*, 951 S.W.2d at 237; *Sanders*, 936 S.W.2d at 438; *Aguirre*, 928 S.W.2d at 759-60;

*Chunn*, 923 S.W.2d at 729; *Reed*, 916 S.W.2d at 592; *see also Bigon*, 2006 Tex. App. LEXIS 8756, at *10.  As such, we cannot say that the trial court erred in denying Lane's motion for a directed verdict.  *See* TEX. PENAL CODE ANN. § 49.045; *see also Lucio*, 351 S.W.3d at 894; *see also Williams*, 937 S.W.2d at 482.  Accordingly, we overrule Lane's third issue.

## V.     CONCLUSION

Having overruled all of Lane's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
　　　Justice Davis, and
　　　Justice Scoggins
Affirmed
Opinion delivered and filed August 27, 2015
Do not publish
[CR25]

